204 N.J. Super. 192 (1985)
497 A.2d 1291
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TERENCE W. SHARKEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 13, 1985.
Decided September 11, 1985.
*194 Before Judges SIMPSON and GAYNOR.
Robert Seelenfreund, Assistant Public Defender, argued the cause for appellant (Thomas S. Smith, Acting Public Defender, attorney; James K. Smith, Jr., Deputy Public Defender, of counsel and on the brief).
*195 Carol M. Henderson, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; Arlene R. Weiss, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
In this case, defendant challenges the constitutionality of the "look-alike drug" statute, N.J.S.A. 24:21-19.1 et seq., on the grounds of its alleged vagueness, overbreadth and creation of an irrational presumption. We disagree with these attacks and find that the statute does not violate any constitutional requirement. Furthermore, we question defendant's standing to assert these statutory defects generally in view of the circumstances surrounding the application of the statute to his conduct. We are also unpersuaded that the trial court committed reversible error in excluding an exhibit proffered by defendant. Accordingly, the judgment of conviction is affirmed.
The facts giving rise to defendant's arrest and conviction of possession of look-alike drugs with intent to distribute are not in dispute. On October 6, 1982 at approximately 2:20 a.m., officers on patrol in Boonton, N.J. observed a vehicle being operated in an erratic manner. After stopping the vehicle and subjecting the driver to certain field tests for sobriety, the driver was arrested for operating the vehicle while intoxicated. As defendant, who had been a passenger in the vehicle, got out in response to an officer's request, two white capsules fell to the ground. A white plastic bag partially hanging out of defendant's pants pocket was then seized by the officers and found to contain some 200 similar capsules. By virtue of their size and shape, the officers believed the capsules to possibly contain a controlled dangerous substance and, based on this assessment, placed defendant under arrest. The following morning defendant gave a statement to the police indicating that he believed the pills to be "speed" and that he had gotten *196 them the previous evening in exchange for marijuana and that he intended to sell them.
A subsequent laboratory test disclosed the pills to be caffeine and not "speed." Trial testimony offered by the State indicated that the pills were similar in appearance to other types of controlled dangerous substances, that undercover agents had purchased drugs or their "look-alike" non-narcotic counterparts which appeared very similar to the pills possessed by defendant and that reasonable persons would think the pills were controlled dangerous substances even though they were slightly different in appearance from the true narcotics. The prosecution witnesses also testified that they used the Physician's Desk Reference (PDR) to compare the pills seized from defendant with pictures of narcotics contained in this book and found that the pills resembled three types of controlled dangerous substances. During the course of their testimony, these witnesses utilized the PDR in describing the similarities and differences between the controlled dangerous substances and defendant's pills. Although the State did not move the PDR into evidence, at the conclusion of the defendant's case, defense counsel sought its admission. The trial court refused to admit this exhibit on the ground that defendant had not laid a proper foundation qualifying the evidence under an exception to the hearsay rule. A motion for a new trial based upon an alleged error in this ruling was denied as the court considered the refusal to admit the book had not created a potential for prejudice or injustice.
Defendant advances the following appellate arguments:
I. THE LOOK-ALIKE STATUTE VIOLATES BOTH THE STATE AND FEDERAL CONSTITUTION[S].
A. Introduction.
B. N.J.S.A. 24:21-19.1a(3) Is Unconstitutionally Vague.
C. N.J.S.A. 24:21-19.1a(3) Is Unconstitutionally Overbroad.
D. The Defendant Was Convicted With The Use Of An Unconstitutional Presumption.

*197 II. SINCE A PROPER FOUNDATION WAS LAID, THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO ALLOW THE PHYSICIAN'S DESK REFERENCE INTO EVIDENCE.
The so-called "look-alike drug" statute, N.J.S.A. 24:21-19.1, provides in pertinent part:
a. It is unlawful for any person to distribute or to possess or have under his control with intent to distribute any substance which is not a controlled dangerous substance:
(1) Upon the express or implied representation to the recipient that the substance is a controlled dangerous substance; or
(2) Upon the express or implied representation to the recipient that the substance is of such nature, appearance or effect that the recipient will be able to distribute or use the substance as a controlled dangerous substance; or
(3) Under circumstances which would lead a reasonable person to believe that the substance is a controlled dangerous substance.
Any of the following shall constitute prima facie evidence of such circumstances:
(a) The substance was packaged in a manner normally used for the unlawful distribution of controlled dangerous substances;
(b) The distribution or attempted distribution of the substance was accompanied by an exchange of or demand for money or other thing as consideration for the substance, and the value of the consideration exceeded the reasonable value of the substance;
(c) The physical appearance of the substance is substantially the same as that of a specific controlled dangerous substance.
Defendant's complaint as to the impermissible vagueness of subsection (a)(3) of the statute is premised on the assertion that this provision does not clearly and precisely define the prohibited criminal conduct. He questions the definiteness of a test based upon beliefs of a reasonable person and suggests that the vagueness of this standard presents an uncertainty as to the nature of the conduct prohibited by the statute. Thus, he posits that a reasonable person could under certain circumstances wrongly believe that non-narcotic pills, such as vitamin tablets, were controlled dangerous substances thereby subjecting the possessor of the harmless tablets to possible criminal sanctions. He also considers the challenged provision to be unconstitutionally overbroad as it allegedly reaches to behavior which is constitutionally protected. While not challenging the State's interest in prohibiting the sale of "look-alike" substances, *198 defendant claims the fulfillment of this interest does not require that the prohibition of the statute extend to the harmless possession of these substances. His final constitutional attack is directed to the statutory presumption which allegedly permits an irrational relationship between mere possession of substances which are substantially the same as controlled dangerous substances and illegal activity.
The void for vagueness doctrine is a well established procedural due process concept which requires that a penal statute define the criminal offense with sufficient definiteness that ordinary persons can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. While the focus is upon notice to citizens and arbitrary enforcement, a more important aspect of the doctrine is the requirement that the legislation establish minimal guidelines to govern its enforcement. Kolender v. Lawson, 461 U.S. 352, 357-358, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903, 909 (1983).
The doctrine's rationale was expressed in the following terms by the New Jersey Supreme Court in Town Tobacconist v. Kimmelman, 94 N.J. 85, 118 (1983):
We first consider whether the Act is facially vague. Clear and comprehensible legislation is a fundamental prerequisite of due process of law, especially where criminal responsibility is involved. Vague laws are unconstitutional even if they fail to touch constitutionally protected conduct, because unclear or incomprehensible legislation places both citizens and law enforcement officials in an untenable position. Vague laws deprive citizens of adequate notice of proscribed conduct, Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888, 890 (1939), and fail to provide officials with guidelines sufficient to prevent arbitrary and erratic enforcement. Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115 (1972). In Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222, 227-28 (1972), the Supreme Court explained why vague laws are intolerable:
Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory *199 enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. (footnotes omitted).
A law is void as a matter of due process if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926).
Tested by these standards, the statute is not impermissibly vague. The language used is readily understandable and phrased in a plain and easily construed manner. It is clear to us that persons of ordinary intelligence would understand this legislation to proscribe the distribution of, or possession or control with the intent to distribute, substances which are represented as, or substantially similar in physical appearance to, controlled dangerous substances. That the Legislature chose not to set forth a detailed listing of all proscribed activity relating to the distribution of look-alike substances, but instead utilized a general approach in describing the illegal conduct, does not render the legislation void for vagueness. See State v. Lee, 96 N.J. 156, 166 (1984). Just because "the prohibited behavior is not susceptible to precise definition need not lead to legislative paralysis." Id. at 166. It is not difficult to envisage a variety of circumstances which could lead a reasonable person to believe that a non-narcotic substance was being palmed off as the real thing.
Moreover, defendant's contention does not take into consideration the deference accorded regulatory laws which are reasonably related to a proper legislative purpose. In addressing the problems caused by the proliferation of "look-alikes"  the possibility of overdose by young abusers who confuse a strong controlled dangerous substance with its weaker "look-alike" and the possible interference with a physician's ability to treat an overdose because of the confusion of "look-alikes" with narcotics  the statute serves a legitimate purpose and provides a rational means for achieving that purpose. See Statement to *200 Senate, No. 666, Assembly Corrections, Health and Human Services Committee, May 13, 1982. As distribution of "look-alikes" is not a fundamental right protected by the Constitution, it is appropriate that this "rational relationship" test be applied, rather than the stricter "compelling governmental interest" test, in considering whether the legislation results in any infringement of constitutional rights. See State v. Fearick, 69 N.J. 32, 39-40 (1976).
Although defendant asserts a facial challenge to the vagueness and overbreadth of the statute, his clear violation of the law precludes him from complaining of any vagueness of the legislation as applied to his own conduct and other hypothetical applications of the law. Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982). A person to whom a statute clearly applies may not successfully challenge it for vagueness, Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439, 458 (1974), while a facial attack designed to protect the rights of others is "allowed only in the rarest of circumstances, those involving weighty countervailing policies." Town Tobacconist v. Kimmelman, 94 N.J. at 120. The facts of this case do not present such weighty policies warranting the application of this exception.
Also, we do not find the statute to be overbroad in that it reaches a substantial amount of constitutionally protected behavior. As observed in State v. Lee, 96 N.J. at 165, "[t]he standard is not whether the law's meaning is sufficiently clear, but whether the reach of the law extends too far in fulfilling the State's interest." Generally, the overbreadth doctrine is invoked when legislation infringes upon First Amendment rights. Id. at 165. The "look-alike" statute does not impinge upon such rights; in fact, as we interpret it, this legislation does not reach any constitutionally protected conduct. As it pertains only to distribution of a substance under circumstances which would lead a reasonable person to believe that it was a *201 controlled dangerous substance, the law does not relate to protected conduct. We have recently noted that "... mere possession of look-alikes is not a crime without a concomitant `intent to distribrute' under N.J.S.A. 24:21-19.1(a)." State v. One (1) 1979 Chevrolet, 202 N.J. Super. 222 (App.Div. 1985). Hence, the statute does not fail because of overbreadth.
Further, we find no merit in defendant's claim that the statute permits the use of an unconstitutional presumption. He particularly faults the subsection providing that "[a]ny of the following shall constitute prima facie evidence of such circumstances ... (c) The physical appearance of the substance is substantially the same as that of a specific controlled dangerous substance." N.J.S.A. 24:21-19.1(a)(3)(c). It is asserted there is no rational relationship between proof that a substance is substantially the same in appearance to a controlled dangerous substance and the inference that illegal activity is being pursued. However, a statutory presumption "will be sustained if, as a matter of common experience, it is more likely than not that the fact to be presumed follows from the facts giving rise to the presumption." State v. McCandless, 190 N.J. Super. 75, 79 (App.Div. 1983). In our view, it is more likely than not that possession of a substance substantially similar to a controlled dangerous substance would constitute a circumstance leading a reasonable person to the belief that the substance was a narcotic to be used for a prohibited purpose. Also, as the validity of the presumption should be considered with reference to the record, defendant's possession of the look-alike pills and his intention to distribute them justified the inference that a reasonable person would believe the pills to be a controlled dangerous substance. See Ulster County Court v. Allen, 442 U.S. 140, 162-163, 99 S.Ct. 2213, 2227, 60 L.Ed.2d 777, 795 (1979).
We therefore find no state or federal constitutional impediment in this legislative effort to meet and overcome the recognized problems caused by the proliferation of "look-alike" substances by prohibiting the distribution or possession with intent *202 to distribute, together with the selling or manufacturing, of such "look-alike" drugs.
With respect to the evidentiary issue, while the references to the PDR by the State's witnesses might have been considered sufficient to establish its admissibility, we are satisfied the court's ruling was harmless error as the refusal to admit the book did not create a potential for prejudice or injustice in view of the acknowledged uncertainty of the book's value as an exhibit and defendant's own belief that the capsules were a controlled dangerous substance.
The judgment of conviction is affirmed.