STATE of Iowa, Appellant,

v.

Bryan Lee DUNCAN and Marlene Marie Duncan, Appellees.

No. 86–1833.

Supreme Court of Iowa.

Oct. 21, 1987.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., and William E. Davis, Co. Atty., for appellant.

Charles L. Harrington, Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, for appellees.

McGIVERIN, Chief Justice.

Defendants Bryan Lee Duncan and Marlene Marie Duncan were charged by trial information in four counts with delivery of an imitation controlled substance and with advertisement to promote distribution of an imitation controlled substance in violation of Iowa Code sections 204A.4(1), (2) and (3) (1985). Defendants moved to dismiss the trial information on the ground, *inter alia,* that Iowa Code chapter 204A is unconstitutionally vague in violation of their right to due process of law under the fourteenth amendment to the United States Constitution. After hearing, the trial court sustained their motion, finding chapter 204A unconstitutionally vague on its face, and dismissed the trial information. The State

appeals from this ruling. We reverse and remand.

I. *Background facts and proceedings.* Defendants own a store in Davenport, Iowa, named the "Karate Chop Shop." After an investigation, defendants were jointly charged in one trial information with several violations of Iowa Code chapter 204A stemming from sales and advertisements in their store. In count I, Bryan Duncan was charged with delivery of an imitation controlled substance to a person under eighteen years of age who was at least three years his junior in violation of Iowa Code section 204A.4(3). In count II, Marlene Duncan was charged with delivery of an imitation controlled substance in violation of Iowa Code section 204A.4(1). Both defendants were charged in separate counts with posting an advertisement to promote distribution of an imitation controlled substance in violation of Iowa Code section 204A.4(2).

Defendants filed a pretrial motion to dismiss the trial information against them on the ground that chapter 204A was unconstitutionally vague and overbroad, thereby denying them due process of law as guaranteed by the fourteenth amendment to the United States Constitution. After hearing, the motion was sustained on the vagueness challenge alone, the court finding the provisions used to charge the defendants "so vague and indefinite that there cannot be due process in applying" them.

The minutes of testimony filed with the trial information in accordance with Iowa Rule of Criminal Procedure 5(3) indicate that the State expected to prove by its witnesses that defendants sold imitation controlled substances in their store. In addition, the expected testimony would show the following. The substances in the form of sundry pills, tablets, and capsules of various shapes and colors all contained either caffeine or ephedrine. One of the State's witnesses, a seventeen-year-old explorer scout who purchased two bottles of pink heart-shaped tablets, was told by defendant Bryan Duncan the tablets would give him a "good high." A second witness who purchased a bottle labeled "white crosses" from defendant Marlene Duncan was told that the pills labeled "357 magnums" would give him the "best high." The State also expected to prove that on the dates of both sales, a sign posted by defendants outside the store advertising "white crosses, black beauties, etc.," violated Iowa Code section 204A.4(2).

The State timely filed this appeal from the court's ruling sustaining defendants' motion to dismiss the trial information. The State contends that chapter 204A is not unconstitutionally vague as applied to defendants. We agree.

II. *Vagueness challenge.* The charging provisions of Iowa Code chapter 204A,[1] entitled Iowa Imitation Controlled Substance Act, state in section 204A.4:

1. It is unlawful for a person to manufacture, deliver, or possess with intent to deliver, an imitation controlled substance. Except as provided in subsection 3, a person who violates this subsection is guilty of an aggravated misdemeanor.
2. It is unlawful for a person to publish or to post or distribute in a public place, an advertisement or solicitation, if the person knows or reasonably should know the advertisement or solicitation is to promote the distribution of imitation controlled substances. A person who violates this subsection is guilty of a serious misdemeanor.
3. A person who is eighteen years of age or older who violates this section by delivering an imitation controlled substance to a person under eighteen years of age who is at least three years younger than the violator is guilty of a class "D" felony.

---

1. Although the defendants were charged under Iowa Code section 204A.4, the trial court ruled that all of chapter 204A is unconstitutionally vague. We can consider the other provisions of chapter 204A both to help ascertain the legislature's intent and to construe the chapter against the vagueness challenge. *See State v. Connor,* 292 N.W.2d 682, 684 (Iowa 1980) (to discern intent, it is necessary to examine the whole act of which the statutory provision in question is a part); Iowa Code § 4.4(2) (1985) (presumption that legislature intended entire statute to be effective).

To define an "imitation controlled substance," section 204A.2(4) turns one first to the state board of pharmacy examiners list of controlled substances. If the substance in question is not one of the few listed by that board, *see* 620 Iowa Admin.Code 8.17(204) (1987), section 204A.2(4) then defines imitation controlled substance as "a substance which is not a controlled substance but which by color, shape, size, markings, and other aspects of dosage unit appearance, and packaging or other factors, appears to be or resembles a controlled substance." Finally, section 204A.3 adds:

When a substance has not been designated as an imitation controlled substance by the state board of pharmacy examiners and when dosage unit appearance alone does not establish that a substance is an imitation controlled substance the following factors may be considered in determining whether the substance is an imitation controlled substance:

1. The person in control of the substance expressly or impliedly represents that the substance has the effect of a controlled substance.

2. The person in control of the substance expressly or impliedly represents that the substance because of its nature or appearance can be sold or delivered as a controlled substance or as a substitute for a controlled substance.

3. The person in control of the substance either demands or receives money or other property having a value substantially greater than the actual value of the substance as consideration for delivery of the substance.

This is a case of first impression. Iowa's statute appears to be the first of its type to be challenged on vagueness grounds. Similar statutes of other states which have been challenged on vagueness grounds have been aimed at proscribing somewhat different behavior. *See McCrary v. State,* 429 So.2d 1121 (Ala.Crim.App.1982) (construing Alabama Code section 20–2–70(b) (1975) which defines a "counterfeit controlled substance" as one bearing the trademark or markings of another manufacturer without authorization); *Morrow v. State,* 704 P.2d 226 (Alaska Ct.App.1985) (interpreting Alaska Statute section 11.73.-010(a) (1983) listing the actual chemicals an "imitation controlled substance" must contain); *People v. Pharr,* 696 P.2d 235 (Colo. 1984) (interpreting Colorado Revised Statutes section 18–5–306 (Supp.1982) which defines a "counterfeit or imitation controlled substance" as any substance represented to be controlled); *State v. Sharkey,* 204 N.J.Super. 192, 497 A.2d 1291 (App.Div. 1985) (interpreting New Jersey Statutes Annotated section 24:21–19.1a(3) concerning "look alike drugs" which are represented as genuine).

Notably, each of those statutes contained different scienter or guilty knowledge elements. The Alabama statute was declared unconstitutional because it criminalized mere possession of an imitation controlled substance without requiring any intent by the possessor to deliver the substance to another person. The only scienter element was the required knowledge by the violator that he or she possessed an imitation controlled substance.

Scienter in the other states' statutes, which all survived constitutional challenges, was in three parts. The accused individual must have (1) known that the substance possessed or delivered was an imitation controlled substance, (2) must have intended to deliver the substance to another person, and (3) must have intended to pass the imitation substance off as genuine. These statutes are intended to apply to individuals who, in order to avoid prosecution if apprehended, try to sell legal substances in the guise of controlled substances.

By contrast, Iowa's imitation controlled substance statute contains only the first two elements.[2] We have stated before,

---

**2.** Scienter or guilty knowledge of the defendant that the substance he intends to deliver or has delivered is an imitation controlled substance is not an express element of the crime in Iowa Code chapter 204A. Neither is such knowledge that a substance is an actual controlled substance an express element of Iowa Code chapter 204 which deals with actual controlled sub-

that in construing statutes, courts should consider "the evil to be remedied and the objects or purposes the legislative enactment seeks to obtain." *State v. Sullivan*, 298 N.W.2d 267, 271 (Iowa 1980). The available legislative history indicates that Iowa's act is aimed at controlling different conduct than the statutes enacted by other states.

Chapter 204A was originally part of a larger enactment supplementing Iowa Code chapter 204, the existing controlled substance statute. *See* 1982 Iowa Acts ch. 1147. That bill introduced the definition of imitation controlled substance along with this definition of a "simulated controlled substance":

> "Simulated controlled substance" means a substance which is not a controlled substance but which is expressly represented to be a controlled substance, or a substance which is not a controlled substance but which is impliedly represented to be a controlled substance and which because of its nature, packaging, or appearance would lead a reasonable person to believe it to be a controlled substance.

This definition is now codified in chapter 204. *See* Iowa Code § 204.101(27). Appearance of both terms for the first time in the same legislative act indicates a legislative intent to treat imitation controlled substances differently than simulated controlled substances.

We believe the legislature intended that chapter 204A should proscribe "play drugs" that encourage the practice of controlled substance use. Some of the problems caused by imitation controlled substances include "the possibility of overdose by young abusers who confuse a strong controlled dangerous substance with its weaker 'look alike' and the possible interference with a physician's ability to treat an overdose because of the confusion of 'look-alikes' with narcotics." *Sharkey*, 204 N.J.Super. at 199–200, 497 A.2d at 1295

(quoting *Statement to Senate*, No. 666, Assembly Corrections, Health and Human Services Committee, May 13, 1982). The legislature could have also concluded additional danger existed in the potential for these substances to be conveyed as controlled substances at some point in time after the original sale. We do not pass on the wisdom or advisability of a statute. *City of Waterloo v. Selden*, 251 N.W.2d 506, 508 (Iowa 1977). Our task ends at the boundaries of constitutional validity.

The principles we follow in reviewing the validity of criminal statutes were recently summarized in *State v. McKee*, 392 N.W.2d 493, 494 (Iowa 1986). The person challenging a statute carries a heavy burden of rebutting the presumption of constitutionality. If the statute can be made constitutional by a reasonable construction, the court will give it that construction. *Id.* Thus, a statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the constitution. *Saadiq v. State*, 387 N.W.2d 315, 320 (Iowa 1986). The unconstitutional vagueness of a criminal statute must be demonstrated beyond a reasonable doubt. *State v. Wagner*, 410 N.W.2d 207, 214 (Iowa 1987). A statute is not unconstitutionally vague if the meaning of the words used can be fairly ascertained by reference to similar statutes, other judicial determinations, the common law, the dictionary, or the common and generally accepted meanings of the words themselves. *McKee*, 392 N.W.2d at 494. In previous cases we have cited the standards for evaluating vagueness enunciated by the United States Supreme Court in *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972):

> Vague laws offend several important values. First, because we assume that people are free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a

stances. We have noted, however, that such knowledge is an element that our previous cases have read into chapter 204. *See State v. Gibbs*, 303 N.W.2d 673, 682 (Iowa 1981). Iowa Uniform Jury Instructions numbers 3003, 3003A, and 3004 dealing with controlled substance

prosecutions require the jury to find that the defendant knew the substance in question was a controlled substance. We believe the defendants' knowing possession of an imitation controlled substance is, therefore, an imputed element of the offense in chapter 204A.

reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Id.* at 108–09, 92 S.Ct. at 2298–99, 33 L.Ed.2d at 227–28. *See Saadiq,* 387 N.W.2d at 321.

■ "Thus, to withstand a constitutional attack, a penal statute must satisfy two standards: (1) it must give a person of ordinary intelligence fair notice of what is prohibited, and (2) it must provide an explicit standard for those who apply it." *Saadiq,* 387 N.W.2d at 321. These standards should not, of course, be mechanically applied. The degree of vagueness that the constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depend in part on the nature of the enactment. "Perhaps the most important factor affecting the clarity that the constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362, 371 (1982), *reh'g denied,* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1983).

Defendants do not claim, nor did the trial court conclude, that the statute is impermissibly vague in its specific application to their arrest. Rather, the defendants argued, and the court held, that chapter 204A was too vague to be constitutionally applied in any case. Both the defendants and the court sustaining their motion hypothesized situations in which application of the statute could encompass those innocently selling what could be deemed to be an imitation controlled substance. In essence, the statute is challenged as being facially vague.

■ The United States Supreme Court has frequently delineated our task in assessing a facial vagueness challenge. "A 'facial' challenge ... means a claim that the law is 'invalid in toto—and therefore incapable of any valid application.'" *Hoffman,* 455 U.S. at 494, 102 S.Ct. at 1191, 71 L.Ed.2d at 369 (quoting from *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 1233, 39 L.Ed.2d 505, 523 (1974)). Assuming a challenged statute implicates no constitutionally protected conduct, a court examining a vagueness challenge of that statute should uphold the challenge only if the statute is impermissibly vague in all of its applications. *Hoffman,* 455 U.S. at 494–95, 102 S.Ct. at 1191, 71 L.Ed.2d at 369. Therefore, a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. *Id.* at 495, 102 S.Ct. at 1191, 71 L.Ed.2d at 369. This rule applies to criminal laws and civil laws alike. *Id.* at 500, 102 S.Ct. at 1194, 71 L.Ed.2d at 372. The Supreme Court has also stated that "[v]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706, 713 (1975); *accord State v. Willis,* 218 N.W.2d 921, 923 (Iowa 1974). In this case, the defendants did not assert, nor did the trial court rule, that chapter 204A inhibits first amendment freedoms. We therefore examine the defendants' alleged conduct before analyzing other hypothetical applications of the law. *Id.*

■ Upon application of the principles discussed above, we conclude that defendants have not carried the heavy burden of rebutting the presumed constitutionality of chapter 204A. As applied to defendants, the chapter satisfies the two requirements of giving a person of ordinary intelligence fair notice of what is prohibited, and pro-

viding an explicit standard for those who apply it.

First, chapter 204A notifies a person of ordinary intelligence that advertising, delivering or possessing with the intent of delivering an imitation controlled substance is illegal whether or not the violator intends to deceive prospective buyers. Further, the chapter gives a workable definition of an imitation controlled substance for use by both citizens and those who enforce the statute. To convict the defendants of a violation of section 204A.4(2)—the section prohibiting advertising to promote the sale of imitation controlled substances—the State must still prove at trial that by color, size, dosage unit, and other factors the substances advertised resembled genuine controlled substances and that the defendants were aware of the resemblance.

While the State must still prove that the violations with which defendants are charged took place, we can imagine factual situations, including the alleged facts in this case, to which chapter 204A can be constitutionally applied. This alone prevents a finding of facial unconstitutionality. *See City of Des Moines v. Lavigne,* 257 N.W.2d 485, 488 (Iowa 1977).

Under the past record, obtaining convictions for the other alleged violations will depend under the present record, on the State's ability to prove that the defendants represented that the alleged imitation controlled substances had the effect of a controlled substance. This is a permissible factor for consideration under Iowa Code section 204A.3(1). The minutes of testimony filed with the trial information state that on two occasions witnesses were told that the substances sold by defendants could get them "high." Notably, the first definition of "high" in Webster's Dictionary gives this definition under subsection 3(c)(3): INTOXICATED, DRUNK ... also: excited or stupified by a narcotic substance (as heroin). *Webster's Third New International Dictionary* (Unabridged) 1067 (1976). Assuming the State carries its burden of proof on this issue at trial, we conclude that chapter 204A gave fair warning that defendants' conduct qualified the substances mentioned in the trial information as imitation controlled substances under section 204A.3(1).

III. *Disposition.* In summary, defendants have not shown that Iowa Code chapter 204A failed to give them fair warning that their alleged conduct was within the statutory prohibition, nor that the statute gives law enforcement officials or prosecutors the power to determine arbitrarily the scope of the prohibition. Chapter 204A as applied to defendants is not violative of defendants' due process rights because of vagueness. We, therefore, reverse the ruling of the trial court on defendants' motion to dismiss and remand the case for further appropriate proceedings.

REVERSED AND REMANDED.

All Justices concur except SNELL, J., who takes no part.