STATE of Iowa, Appellant,

v.

Ronnie D. BRUMAGE, Appellee.

No. 87–1571.

Supreme Court of Iowa.

Jan. 25, 1989.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., E.A. Westfall, County Atty., for appellant.

David E. Richter, Council Bluffs, and Troyce A. Wheeler, Council Bluffs, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, CARTER, and ANDREASEN, JJ.

SCHULTZ, Justice.

The State appeals from the trial court's pretrial dismissal of four criminal charges filed against Ronnie D. Brumage for the drugging of dogs in violation of Iowa Code section 99D.25(3)(b) (1987). Following a hearing on defendant's motion to dismiss, the defendant abandoned the portion of his motion based on the State's failure to state a prima facie case. He instead relied solely on the claim that the charging statute was unconstitutionally vague. The court entered a dismissal on its own initiative pursuant to Iowa Rule of Criminal Procedure 27(1), dismissing the Trial Information "in the furtherance of justice." While the court did not directly rely on the constitutional claim, it opined that section 99D.25(3) was vague. The State appeals, claiming that the trial court abused its discretion by dismissing the Trial Information and that Iowa Code section 99D.25(3) is not unconstitutionally vague. We reverse.

The "minutes of testimony," attached to the trial information, reveal that State agents conducted a dog drugging investigation at the Brumage Kennels at Bluffs Run track in Council Bluffs. It was

learned that defendant Ronnie Brumage, son of the kennel owner, was injecting some of their dogs with a substance to improve their racing performance. Four dogs were injected on March 9, 1987, and each dog raced on either March 10th or 11th.

The state agent seized drug vials and syringes. The Diagnostic Laboratory at Iowa State University tested the contents of a vial and syringe, the results revealing they contained Boldenone Undecylenate, an anabolic steroid found in the drug Equipose. This drug is used to increase muscle mass, influence metabolism rates and sometimes produce aggressive behavior in animals. It is a synthetic compound not naturally found in animals. The urine samples taken on the dogs prior to their races on March 10th and 11th continue under testing.

In adopting pari-mutuel betting, the legislature prohibited certain acts relating to horse or dog racing. In charging Brumage, the State relied upon the prohibition against "the drugging of a ... dog with knowledge or reason to believe that the ... dog will compete in a race while so drugged...." § 99D.25(3)(b). "Drugging" is defined as "administering to a ... dog any substance, foreign to the natural ... dog prior to the start of a race." § 99D.25(1)(a).

Defendant filed a motion to dismiss which was set for hearing and generated a rather unusual evidentiary proceeding. Without objection, defendant called the county attorney as a witness and sought to have her interpret the terms of the applicable statute. Defendant also called other racing officials, veterinarians, and a D.C.I. agent seeking their interpretations of terms, among other matters. The State, on the other hand, presented no evidence, but did ask the court to take judicial notice of certain rules of Greyhound Racing. This hearing was conducted despite the fact that defendant had neither sought, nor obtained, the required Bill of Particulars for a motion to dismiss grounded generally on insufficiency of the evidence. *See State v. Graham*, 291 N.W.2d 345, 350 (Iowa 1980).

At oral argument on appeal, defendant's counsel conceded that he was aware of this deficiency. He further stated that when an in-chambers conference with the judge led him to believe that his motion was going to be sustained, he withdrew the portion of the motion based on general insufficiency of the evidence to avoid this problem.

Despite the withdrawal of this portion of the motion, the trial court was troubled by what it perceived to be the weakness of the State's case. It reviewed the defendant's evidence and the proof required under the charging section. It decided that the State could not show that these dogs competed while drugged and concluded that if the case were to proceed to trial, the court would be forced to sustain an acquittal motion at the conclusion of the State's evidence. After commenting on the wasted expense of a trial, the court dismissed the case in the furtherance of justice under Rule of Criminal Procedure 27(1).

I. *Dismissal.* Various procedures for dismissal are available. First, trial courts are vested with authority to dismiss criminal charges by Iowa Rule of Criminal Procedure 10(6), which sets out specific grounds required for such a motion. Second, after the State's evidence is offered at trial, the defendant is entitled to a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offense charged. Iowa R.Crim.P. 18(8)(a). A third method of dismissing an action is under Rule of Criminal Procedure 27(1), which was relied upon by the trial court in this case. This rule provides:

> The court, upon its own motion or the application of the prosecuting attorney, in the furtherance of justice, may order the dismissal of any pending criminal prosecution, the reasons therefor being stated in the order and entered of record, and no such prosecution shall be discontinued or abandoned in any other manner. Such a dismissal is a bar to another prosecution for the same offense if it is a simple or serious misdemeanor; but it is not a bar if the offense charged be a felony or an aggravated misdemeanor.

The State maintains that the trial court erred in two respects: first, the State should have been advised of the court's intention to dismiss in the furtherance of justice, enabling it to present an argument on the merits of the case; and second, the court abused its discretion in dismissing the charges prior to trial because, contrary to the trial court's conclusion, the evidence creates a jury question regarding defendant's guilt of the crimes charged.

■ A. *Notice.* The State complained that the trial court failed to provide notice that it was contemplating dismissing the case under Rule 27(1). Defendant concedes that there is no record of notification. We must determine whether notice to the parties is required.

No specific provision in Rule 27(1) requires a trial court to give notice before entering a dismissal. However, our previous pronouncements leave little doubt that such notice is mandated. In regard to our rule's predecessor, we stated that prior to dismissal, "a fair opportunity for each side to present its case must be afforded" to provide a requisite "opportunity for each side to be heard." *In re Judges of the Municipal Court,* 256 Iowa 1135, 1137, 130 N.W.2d 553, 555 (1964). Our court of appeals specifically recognized a right of notice to the State in stating, "[i]f trial court was considering dismissal of the charges in the furtherance of justice, fair notice of its intention to do so should have been given to the parties and a full hearing held to permit them to argue the merits of dismissal or trial of the remaining charges." *State v. Lundeen,* 297 N.W.2d 232, 235 (Iowa App.1980). We hold that the trial court's failure to afford the State an opportunity to present reason why the case should not be dismissed was an abuse of its discretion.

B. *Propriety of Dismissal.* A trial court's authority to dismiss under Rule 27(1) is limited by the general phrase "in the furtherance of justice." While we have not previously defined the bounds of this phrase, we have suggested that proper reasons for dismissal under this rule include "facilitating the State in gathering evidence, procuring witnesses, or plea bargaining." *State v. Fisher,* 351 N.W.2d 798, 801 (Iowa 1984) (citing *State v. Johnson,* 217 N.W.2d 609, 612–13 (Iowa 1974)).

Other jurisdictions with similar statutes have curtailed the trial court's authority to dismiss. Perhaps the most limited application has been made by the Washington court which requires that the dismissal be based on a showing of arbitrary action or governmental misconduct. *State v. Whitney,* 96 Wash.2d 578, 579–80, 637 P.2d 956, 958 (1981). The Washington appellate courts have also upheld the trial court's inherent authority to dismiss for insufficiency of the charge or insufficiency of the evidence. *State v. Knapstad,* 41 Wash. App. 781, 786, 706 P.2d 238, 241 (1985). However, the state Supreme Court indicated that a motion to dismiss on this ground is premature before the court has opportunity to hear the evidence at trial. *State v. Tyler,* 77 Wash.2d 726, 738, 466 P.2d 120, 127 (1970).

In interpreting its similarly worded statute, the California Supreme Court stated that such language "requires consideration both of the constitutional rights of the defendant, and the *interest of society represented by the People,* in determining whether there should be a dismissal." *People v. Orin,* 13 Cal.3d 937, 945, 533 P.2d 193, 199, 120 Cal.Rptr. 65, 71 (1975). At a minimum, the reason for dismissal must be "that which would motivate a reasonable judge." *Id.* at 945, 533 P.2d at 199, 120 Cal.Rptr. at 71.

Similar to California, New York interpreted its statute to require a court to attain a sensitive balance between the individual and the state. *People v. Insignares,* 109 A.D.2d 221, 231, 491 N.Y.S.2d 166, 173 (1985). The court warned that the trial court's discretion to dismiss in the interest of justice, should be "exercised sparingly" and only in that "rare" and "unusual" case where it "cries out for fundamental justice beyond the confines of conventional consideration." *Id.* at 234, 491 N.Y.S.2d at 175 (citation omitted); *see e.g., People v. Superior Court,* 69 Cal.2d 491, 504, 446 P.2d 138, 147, 72 Cal.Rptr. 330, 339 (1968) (to avoid

harassment of retrial when defendant has already served appropriate period of incarceration awaiting trial, "notwithstanding the fact that there is sufficient evidence of guilt"); *People v. Dewberry,* 40 Cal.App.3d 175, 185, 114 Cal.Rptr. 815, 822 (1974) (dismissal proper when essential evidence to prove guilt is required to be excluded); *People v. Superior Court, Santa Barbara County,* 20 Cal.App.3d 684, 687, 97 Cal. Rptr. 886, 888 (1971) ("only possible result of a conviction ... would be a concurrent sentence" and such a nominal increase in penalty would only "harass defendant"); *State v. Witt,* 572 S.W.2d 913, 917 (Tenn. 1978) (court's inherent authority properly used to dismiss indictment after three prior error-free trials resulted in deadlocked juries and, at future trial, substantially the same evidence would be presented).

■ In interpreting the "in furtherance of justice" language of our rule, we believe that California and New York have the better-reasoned rule. We hold that our trial court should dismiss only after considering the substantive rights of the defendant and the interests of the state.

■ Our court of appeals adopted certain factors for trial court consideration including, but not limited to:

(1) weight of the evidence of guilt or innocence; (2) nature of the crime involved; (3) whether defendant is or has been incarcerated awaiting trial; (4) whether defendant has been sentenced in a related or similar case; (5) length of such incarceration; (6) possibility of harassment; (7) likelihood of new or additional evidence at trial; (8) effect on the protection to society in case the defendant should actually be guilty; (9) probability of greater incarceration upon conviction of another offense; (10) defendant's prior record; (11) the purpose and effect of further punishment; and (12) any prejudice resulting to defendant by the passage of time.

*Lundeen,* 297 N.W.2d at 236. We approve of these factors, however, we would also note that a court has broader discretion to dismiss a case in the furtherance of justice after the verdict than during the trial.

*People v. Superior Court of Marin County,* 69 Cal.2d 491, 503, 446 P.2d 138, 146, 72 Cal.Rptr. 330, 338 (1968). After the verdict, the judge has heard the prosecution's evidence, whereas before trial, there is always a possibility that without a dismissal, more evidence may be received. *Id.* at 503, 446 P.2d at 146, 72 Cal.Rptr. at 338.

■ Our review of the trial court's dismissal under Rule 27(1) is for abuse of discretion. *Lundeen,* 297 N.W.2d at 235. This court will not find an abuse of discretion unless the State shows that such discretion was exercised on grounds clearly untenable or, to an extent, clearly unreasonable. *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982).

■ The trial court in this case held that for reasons of justice and economy, the charges should be dismissed because it assumed that the defendant would be entitled to an acquittal motion at the conclusion of the State's evidence. We find this reasoning clearly untenable. While the court had heard some of the evidence, the State had not presented its case. The State was deprived of its opportunity to put forth evidence to satisfy the elements of the charge.

Nevertheless, defendant urges that the trial court relied upon certain undisputed evidence in its ruling. This reliance was misplaced. The trial court stated it was undisputed that the defendant is neither the owner nor the trainer of these dogs and did not enter the dogs in a race. These are elements of section 99D.25(3)(a), but are not required in subsection (b), the section under which defendant's charges were pending. Whether Brumage was the dogs' owner or trainer or entered the animals in a race is irrelevant.

Finally, the trial court indicated that the State must be able to prove that the dogs "will compete while drugged." It stated that all the drug tests on the pertinent dogs have been negative and that the State cannot show by any means that a certain dog has competed while drugged without a positive test result. The trial court also misreads subsection (b). This statute does not prohibit the drugging of a dog that

competes in a race. Rather, it prohibits the drugging of a dog with the belief that the dog will compete in a race while so drugged. The State should have been allowed to demonstrate at trial that the defendant drugged the dogs with the intent that they would race while drugged.

In summary, we hold that the trial court abused its discretion by dismissing the charges "in the furtherance of justice" based on the lack of evidence before the State had an opportunity to present its case at trial.

■ II. *Vagueness.* In his motion to dismiss, defendant claimed that section 99D.25(3)(b) is so overbroad as to violate both the federal and state constitutions. Apparently, the defendant's attack on the overbreadth of the statute shifted to a claim of vagueness during the proceedings. Both his trial brief and the trial court ruling refer only to vagueness.

The issue of vagueness appears to have been before the trial court by consent. After dismissing the charges "in the furtherance of justice," the trial court ruling went on to characterize section 99D.25(3)(b) as unconstitutionally vague. Although the trial court did not directly rely on this conclusion in its dismissal, it essentially stated constitutionality as an alternate reason for its ruling. Both parties argued this issue on appeal and we believe that it is properly before us.

Our principles of review for the validity of a criminal statute were summarized in *State v. Duncan,* 414 N.W.2d 91 (Iowa 1987). The person challenging the statute carries the heavy burden of rebutting the presumption of constitutionality. *Id.* at 95. If the statute can be made constitutional by a reasonable construction, the court is required to give it that construction. *Id.* The statute will only be declared unconstitutional when it clearly, palpably and without doubt, infringes the constitution. *Id.*

■ A penal statute, attacked on vagueness grounds, must satisfy two specific standards: (1) it must give a person of ordinary intelligence fair warning of what is prohibited; and (2) it must provide explicit standards for those who enforce it. *State v. McKee,* 392 N.W.2d 493, 494 (Iowa 1986). A statute is not unconstitutionally vague if the meaning of the words used can be fairly ascertained by reference to similar statutes, other judicial determinations, the common law, the dictionary, or the common and generally accepted meaning of the words themselves. *Id.*

In this case, defendant claims two parts of this statute are so general as to render the statute void. Specifically, the phrases "any substance foreign to the natural dog" and "prior to the start of a race" are objected to. Defendant contends that the witnesses' interpretations of these phrases varied greatly. He claims that the statute's "prohibitions are not clearly defined and causes persons of ordinary intelligence to guess what is prohibited." He further asserts, "the language is so overbroad as to include conduct which no one ever intended to make illegal."

A statute may be challenged for vagueness either on its face or as it applies to the specific defendant. A facial challenge claims the law is totally invalid and therefore, "incapable of any valid application." *Duncan,* 414 N.W.2d at 96 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982), *reh'g denied,* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982)). As we read defendant's trial and appellate briefs and the trial court decision, this appears to be a facial attack on the statute.

In summarizing the applicable law for facial attacks to statutes, the United States Supreme Court stated:

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all

of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

*Hoffman Estates*, 455 U.S. at 494–95, 102 S.Ct. at 1191, 71 L.Ed.2d at 369 (footnotes omitted).

■ Defendant initially claimed that the statute is so far-reaching that it is overbroad. The overbreadth doctrine is applicable to state regulations which sweep unnecessarily broadly and invade the area of protected freedoms. *See Broadrick v. Oklahoma*, 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839–40 (1973). That doctrine does not apply here.

Turning next to the facial vagueness challenge, we must determine if, under the statute, "no standard of conduct is specified at all," *Parker v. Levy*, 417 U.S. 733, 755, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439, 457 (1974), or if the statute "is impermissibly vague in all of its applications." *Hoffman Estates*, 455 U.S. at 497, 102 S.Ct. at 1193, 71 L.Ed.2d at 371. We conclude that defendant made no such showing.

Section 99D.25(3)(b) does specify a standard of conduct when viewed in light of statutory and agency definitions and the specified purposes of the statute. The statute prohibits the drugging of a dog with the knowledge or reasonable belief that the dog will race while drugged. "Drugging" is defined as the administering of a foreign substance to the dog prior to a race. § 99D.25(1)(a). The Iowa Racing and Gaming Commission's regulations further define "foreign substance" as "any drug ... foreign to the greyhound's body, which does or could affect the racing condition of a greyhound, or which does or could affect sampling or testing procedures." Iowa Admin.Code 491–7.1(99D) (1988).

The statute's purposes further clarify these phrases. Section 99D.25(2) states that the drugging of a dog prior to a race:

a. Corrupts the integrity of the sport of racing and promotes criminal fraud in the sport;

b. Misleads the wagering public and those desiring to purchase a horse or dog as to the condition and ability of the horse or dog; ....

When these provisions are considered together, a standard of prohibited conduct is specified. Foreign substances, such as drugs which could affect the racing condition or ability of a dog, are not to be administered at a time prior to the race so that the dog will race while drugged, thereby misleading the wagering public of the dog's condition.

In addition, when we examine vagueness, we need first look only to the statute's specific application to defendant to determine whether it is vague. *Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191, 71 L.Ed.2d at 369. If it is constitutional as applied, by definition, it is not unconstitutional on its face. *State v. Hepburn*, 270 N.W.2d 629, 631 (Iowa 1978). The litigant cannot "borrow" the unconstitutionality claim of another. *Id.* We do not believe that the term "substance foreign to the natural dog" is so uncertain that defendant did not understand its application. The State asserted that defendant drugged four different dogs between March 1 and March 23, 1987, with reason to believe that the dogs would compete in a race while so drugged. The State anticipates proving that during this time period, defendant was injecting his dogs with an anabolic steroid called Equipose. The State expects an employee of the kennel to testify that defendant stated "he was getting something in that would help the dogs run better," that the employee was "to keep her mouth shut about it" and that "the injection he was using would not show up in any of the tests performed by the Racing Commission." It is obvious that the legislature meant to prohibit the placing of any drug or other like substance into the body of a dog, where it is not normally found, in order to affect the outcome of a race. Defendant is charged with injecting the dogs shortly before he would expect them to run. We believe that as applied to the defendant,

this statute satisfies the vagueness test previously set forth.

 Therefore, defendant's facial attack of the statute must fail because a standard of conduct is specified and further, it is not vague in all of its applications. This defendant, whose own activity clearly falls within the statute's proscription, is not entitled to attack the statute because the statute does not give similar fair warning to other conduct which might be within its broad and literal ambit. *Parker*, 417 U.S. at 756, 94 S.Ct. at 2562, 41 L.Ed.2d at 458; *see also Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191, 71 L.Ed. 2d at 369; *Hepburn*, 270 N.W.2d at 631. Therefore, we find that the trial court erred in determining that section 99D.25(3) is unconstitutionally vague as applied to defendant.

REVERSED AND REMANDED.