# IN THE SUPREME COURT OF IOWA

No. 19–2011

Submitted November 17, 2020—Filed April 9, 2021

**STATE OF IOWA,**

Appellant,

vs.

**DEAONSY SMITH JR.,**

Appellee.

---

Appeal from the Iowa District Court for Dubuque County, Monica L. Zrinyi Wittig, Judge.

The State appeals the dismissal of a trial information based on prefiling delay. **REVERSED AND REMANDED.**

Mansfield, J., delivered the opinion of the court in which Waterman, McDonald, Oxley, and McDermott, JJ., joined in full and Christensen, C.J., joined as to all but division III.E. Christensen, C.J., filed an opinion concurring specially in division III.E. Appel, J., filed an opinion concurring in part and dissenting in part.

Thomas J. Miller, Attorney General, Timothy M. Hau, Assistant Attorney General, C.J. May, County Attorney, and Brigit A. Barnes, Assistant County Attorney, for appellant.

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellee.

**MANSFIELD, Justice.**

When does prosecutorial delay in arresting and formally charging someone amount to a due process violation? By late December 2017, law enforcement had focused on a specific individual as the person who had likely committed a robbery. Yet the police did not file a criminal complaint against him until August 2018. In addition, they did not serve the arrest warrant until September 2019. The individual was serving a prison sentence on other charges, and although he tried to force a resolution of the robbery case, the county attorney declined to have him arrested or formally charged. This delay, for which the county attorney offered no reason or excuse, led the district court to dismiss the trial information in October 2019, after it finally was filed. The State appealed.

On appeal, we echo the district court's frustration with the unexplained delay in this case. However, we conclude the State's delay did not violate the speedy indictment rule because that rule is triggered only when the defendant is arrested and held to answer. We also conclude the State's delay did not violate due process because the defendant failed to show actual prejudice. Accordingly, with some reluctance, we reverse the dismissal of this case and remand for further proceedings.

## I. Facts and Procedural Background.

At 11:30 p.m. on December 8, 2017, M.B. stopped her automobile in front of the apartment building where she lived in Dubuque. While sitting in her automobile, M.B. noticed a man standing in front of the building. The man waved his hands at M.B. to get her attention. The man started to talk to M.B. through the passenger side window. After a few moments, the man opened her passenger side door, got into the vehicle, and shut the door. Once inside, the man asked M.B. for money to feed his grandchildren. M.B. reluctantly gave him twenty dollars. The man

demanded more. M.B. refused to give him more money. At this point, the man became angry and told her that he had a gun and threatened to rape and shoot her.

The man took M.B.'s purse, emptied it, and forced her to drive to a local ATM. At the ATM, M.B. withdrew $200 for the man. Next, the man demanded M.B. return to her apartment complex and show him exactly where she lived. Upon their arrival, M.B. was instructed to park at the rear of the apartment buildings. The man revived his threats to rape and kill M.B. if she reported this incident to the police. In efforts to hamper M.B. from following him, he made her "pull down her pants so she couldn't follow him out of the vehicle." The man exited from the car and fled the area.

Later, the police were contacted, and an investigation ensued. Surveillance footage from the ATM confirmed M.B.'s version of events and her general description of the man who had robbed her. Police also obtained camera footage that depicted a similar-looking man earlier that evening entering and leaving a residence where he had offered to sell a video game. Upon reviewing this footage, a police officer recognized the man on video as Deanosy Smith, Jr., from a prior encounter.

On December 22, Smith was taken into custody on a different matter. Although M.B. was not able to identify Smith in a photographic lineup, his overall appearance, his mumbling speech pattern, and his teeth were consistent with M.B.'s description. A book lamp was in Smith's possession at the time he was arrested and booked, similar to the one M.B. described to police as having been in her purse.

On August 7, 2018, a Dubuque police officer filed a criminal complaint alleging Smith had committed robbery in the second degree in violation of Iowa Code section 711.3 (2018). On that same day, the district

court issued an arrest warrant. The August 2018 arrest warrant was not served at that time.

Instead, on February 8, 2019, Smith—who had learned of the warrant—filed a written arraignment and plea of not guilty from the Fort Dodge Correctional Facility, where he was incarcerated on other charges. On the arraignment form, Smith checked a box indicating his demand for a speedy trial.

On February 13, the Dubuque County District Court rebuffed Smith's filing, stating it would take no action because "the State has not filed a Trial Information" and "arraignment is premature." The court said it would "address Defendant when he has appeared on the warrant."

On February 21, Smith filed an application for appointment of counsel. He explained that he was still incarcerated and that his "knowledge of the law is very limited, the issues presented are very complex and the resources in the prison law library [are] limited." Again, on March 5, the district court entered an order indicating it would not act on the filing. The court said it would "address the application and appoint Defendant counsel when he appears on the warrant."

Later that month, Smith wrote a letter to the court again asserting his rights to a speedy trial under the Iowa Rules of Criminal Procedure and the Fifth Amendment to the U.S. Constitution. The letter concluded, "The Defendant is requesting that an attorney be appointed and that he'll be transported to the Dubuq[u]e County Court as soon as possible so this matter may be cleared up."

Upon receiving the letter, the district court issued a March 27 order again taking no action. The order noted that Smith was in custody at the Fort Dodge Correctional Facility and that "the State is aware of his whereabouts and is free to seek an order for transport."

On April 5, Smith filed a motion to dismiss "for lack of due process." The motion reiterated, "The Defendant wishes to be transported and to be heard in this case immediately and to have a speedy trial in this case." This motion too was denied. The court explained, "As the Court has previously noted, once Defendant is brought before the Court to appear on the warrant, proper action will be taken."

On August 12, Smith filed a motion to dismiss the detainer that had been apparently placed upon him months ago. Smith's filing attached a copy of a January 25 Iowa Department of Corrections' (DOC) letter confirming the detainer's existence and the DOC's plans to notify the Dubuque police department approximately thirty days before Smith's release.[1] Smith asserted that the failure to file an information within six months rendered the detainer invalid under Iowa Code section 906.14(3).

This time, the district court appointed counsel, who promptly filed an additional motion to dismiss for speedy trial and speedy indictment violations. The motion asserted that (1) Smith's "whereabouts . . . have been known for over 6 months," (2) that Smith's written waiver of formal arraignment was effectively an appearance, (3) that the State had failed to indict Smith within the required forty-five days, and (4) that Smith's "detainer has had an effect on his potential parole date."

The State responded to Smith's motion to dismiss the detainer on September 12. The State acknowledged that Iowa Code section 906.14 requires a detainer filed against a prisoner to be supported by an indictment or information within six months, and requires the detainer to be held invalid and disregarded for parole purposes if not supported within six months by an indictment or information. *See* Iowa Code § 906.14(2),

---

[1]According to the letter, Smith's sentence was tentatively scheduled to expire on August 16, 2021.

(3). The State conceded that the six-month deadline had passed and that the parole board "may thus disregard the detainer." Yet, the State also asserted that this should have no effect on the State's ability to pursue criminal charges against Smith for his alleged robbery of M.B.

That same day, September 12, Smith was transported from the Fort Dodge Correctional Facility to the Dubuque County courthouse for a late afternoon hearing on his motion to dismiss. At that time, Smith was served with the arrest warrant. Following the hearing, the State filed a resistance to Smith's motion to dismiss.

On September 17, the State filed a trial information charging Smith with second-degree robbery as a habitual offender.

On October 31, the district court entered a written order dismissing the case. The district court quoted Iowa Rule of Criminal Procedure 2.33(2)(*a*), which requires the indictment or information to be filed within forty-five days of arrest, but primarily based its conclusion on due process grounds. As the court put it,

> The Defendant argues that his due process rights have been violated and his Fifth Amendment Rights are implicated. The Defendant asserts the delay was unconscionable. The Defendant was writing to the Court to notify the State where he was and that he wanted to address the allegations. His efforts put the State on notice to arrest him where he could be found, to wit: the State's Correctional Facility. There is spoliation of evidence now. Witnesses' memories have faded now. His ability to assert an alibi has been extinguished. His ability to defend the allegations has been compromised or even destroyed due to the delay.

> The State had the Defendant in custody within a week of the events occurring. The State had buccal swabs. The State had the Defendant's clothing. The state had traffic cam video. The State had evidence from a bank ATM record to corroborate the allegation that the Defendant made the named victim take her to her bank and withdraw money. The State offered no reason why the complaint was not filed in December of 2017. It offered no justification for waiting to file the complaint eight (8) months later. It offered no excuse for not having the

warrant executed while the Defendant was in the custody of the Director of Adult Corrections.

The court concluded that Smith's "Fifth Amendment rights have been violated" and "[h]is speedy trial rights have also been violated."

The State appealed, and we retained the appeal.

## II.  Standard of Review.

We review de novo the district's court determination that Smith's constitutional right to due process was violated.  *State v. Trompeter*, 555 N.W.2d 468, 470 (Iowa 1996).  "We review interpretations of the speedy indictment rule for errors at law."  *State v. Williams*, 895 N.W.2d 856, 860 (Iowa 2017).  We are bound by the district court's findings of fact if they are supported by substantial evidence.  *Id.*  We review a dismissal in the furtherance of justice under rule 2.33(1) for abuse of discretion.  *State v. Piper*, 663 N.W.2d 894, 901 (Iowa 2003), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010).

## III.  Legal Analysis.

**A.  Speedy Indictment.**  Iowa Rule of Criminal Procedure 2.33(2) states,

> It is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties.  Applications for dismissals under this rule may be made by the prosecuting attorney or the defendant or by the court on its own motion.

Furthermore, with respect to the filing of the indictment or information, the rule provides,

> When an adult is arrested for the commission of a public offense, or, in the case of a child, when the juvenile court enters an order waiving jurisdiction pursuant to Iowa Code section 232.45, and an indictment is not found against the defendant within 45 days, the court must order the prosecution to be dismissed, unless good cause to the contrary is shown or the defendant waives the defendant's right thereto.

*Id.* r. 2.33(2)(*a*).

State v. Williams, 895 N.W.2d 856, provides the most recent definition of how courts are to apply the speedy indictment rule. In *Williams*, the defendant was initially taken into police custody, Mirandized, and questioned about a reported rape. *Id.* at 858. However, the defendant was soon released and over a year passed before the defendant was formally arrested on a charge of sexual abuse in the second degree and made an initial appearance. *Id.* at 858–59. Several days later, the State filed its trial information. *Id.* at 859. Like Smith, the defendant in *Williams* submitted a motion to dismiss for violation of his speedy indictment rights. *Id.* We concluded that the defendant's motion was properly denied, reasoning that the defendant had not been arrested for rule 2.33(2)(*a*) purposes until a formal arrest had occurred that led to his making an initial appearance:

> Arrest for the purposes of the speedy indictment rule requires the person to be taken into custody in the manner authorized by law. The manner of arrest includes taking the arrested person to a magistrate. The rule is triggered from the time a person is taken into custody, but only when the arrest is completed by taking the person before a magistrate for an initial appearance.

*Id.* at 867.

While an arrest warrant for Smith had been issued in August 2018 for the alleged robbery of M.B., it was not served on Smith at that time, and he did not make an initial appearance on that charge. The fact that Smith may have been in custody for other reasons is irrelevant. *See id.* at 867–68 (Mansfield, J., concurring specially) (discussing the distinction between a statutory arrest and Fourth Amendment custody); *State v. Gathercole*, 553 N.W.2d 569, 572 (Iowa 1996) (en banc) (holding that even transporting an extradited defendant from Utah to Iowa did not trigger the

speedy indictment rule because an arrest within the meaning of Iowa Code chapter 804 was required). Smith's argument resembles an unsuccessful argument asserted in *State v. Waters*, 515 N.W.2d 562 (Iowa Ct. App. 1994). There, the court of appeals ruled the defendant had not been arrested for speedy indictment purposes just because he was already in jail in a different county on a different matter. *Id.* at 566 ("[T]he forty-five day time period for indictment commences upon the arrest for the offense charged in the existent proceedings.")

Smith is unable to distinguish these authorities, and we hold there was no violation of rule 2.33(2)(*a*).

**B. Due Process Under the United States Constitution.** In the district court, Smith couched his constitutional claim exclusively in terms of due process. The district court agreed with Smith and ruled that his due process rights under the Fifth Amendment were violated.

We believe that ruling was in error. Due process does impose some limits on how long the State can wait to prosecute someone. But to obtain dismissal on this ground, the defendant must show actual prejudice. *See Trompeter*, 555 N.W.2d at 471. In *State v. Trompeter*, the State determined that a juvenile had committed two separate sexual assaults. *Id.* at 469. It offered to allow the juvenile to plead guilty to one count of third-degree sexual assault. *Id.* When the juvenile declined, the State pursued one of the incidents and obtained an adjudication of delinquency while the juvenile was sixteen. *Id.* Two years later, when he had turned eighteen, the State filed a trial information charging him with second-degree sexual abuse in the other incident. *Id.* The district court found a due process violation, reasoning that "the State's actions in '[o]ffering to plea bargain the charge away, then holding it over the defendant's head for three years, then charging him on his eighteenth birthday' constituted 'unjustifiable

government conduct' or was based on an 'illegitimate prosecutorial motive,' and a violation of Trompeter's due process rights." *Id.* at 470 (alteration in original). We affirmed on appeal. *Id.* at 471.

In *Trompeter*, we summarized the applicable law as follows:

> There is no constitutional right to be arrested and charged at the precise moment probable cause comes into existence. But if the government delays filing charges to intentionally "gain [a] tactical advantage over the accused," the defendant's due process rights are implicated.
>
> To prove a pre-accusatorial delay violated due process, the defendant must show: (1) the delay was unreasonable; and (2) the defendant's defense was thereby prejudiced. A defendant must prove *both* of these elements to prevail. Prejudice to the defendant must be *actual*; the defendant cannot rely on mere general claims of prejudice. The length of the delay, and any valid reason for it, must be balanced against the resulting prejudice against the defendant.

*Id.* at 470 (alteration in original) (citations omitted) (quoting *United States v. Marion,* 404 U.S. 307, 324, 92 S. Ct. 455, 465 (1971)).

Our court found a due process violation in *Trompeter* because the State had intentionally undermined the juvenile justice process. *Id.* at 471. Presumably, the juvenile court was aware of both offenses when it selected the facility for the juvenile to be committed following his delinquency adjudication. *Id.* Yet the prosecutor intentionally kept one of the two criminal charges in his back pocket so he could bring it later if he wanted. *Id.*

> The delay [in bringing charges in the other incident] was admittedly undertaken so that the full force of adult criminal court could later be brought to bear on a sixteen year old, who—but for the delay—would experience only juvenile court.

*Id.*

In our jurisprudence in this area, we have emphasized that "generalized claims of prejudice" are insufficient. *State v. Brown,* 656

N.W.2d 355, 363 (Iowa 2003).  As *State v. Brown* points out, "To prevail on a claim that such a delay violated due process, a defendant has the heavy burden of proving both (1) the defendant's defense suffered *actual* prejudice due to a delay in prosecution and (2) the delay causing such prejudice was unreasonable." *Id.*

Our emphasis on actual prejudice has been unwavering.  *See State v. Wagner*, 410 N.W.2d 207, 210 (Iowa 1987) (finding no due process violation in a twenty-month delay in bringing charges against the defendant over his participation in a prison riot and specifically noting a lack of actual prejudice); *State v. Hall*, 395 N.W.2d 640, 643 (Iowa 1986) ("If the defendant is asserting witnesses are missing as a result of the delay, he must show the witness would have provided material evidence for the defense."); *State v. Williams*, 264 N.W.2d 779, 783 (Iowa 1978) ("Actual prejudice must be both alleged and proved.").  *Brown* highlights that actual prejudice is a necessary threshold in the due process analysis, and failure to establish actual prejudice should end the inquiry.  656 N.W.2d at 363 & n.6.

In *State v. Edwards*, which we quoted and cited with approval in *Brown*, 656 N.W.2d at 363, the court of appeals declined to find a due process violation when the State waited twenty-one months after identifying the defendant as the seller of drugs to bring formal charges.  571 N.W.2d 497, 501–02 (Iowa Ct. App. 1997).  The court found a lack of actual prejudice, explaining,

> Generalized assertions of loss of memory, loss of witnesses, or loss of evidence are insufficient to establish actual prejudice.  These types of claims generally fall within the ambit of protection provided by the statute of limitations.  To establish actual prejudice, a defendant must show loss of evidence or testimony has meaningfully impaired his ability to present a defense.

*Id.* at 501 (citations omitted); *see also United States v. Marion*, 404 U.S. at 322, 92 S. Ct. at 464 (noting that "[t]he law has provided other mechanisms to guard against possible as distinguished from actual prejudice resulting from the passage of time between crime and arrest or charge" and characterizing the statute of limitations as "the primary guarantee against bringing overly stale criminal charges"); *Williams*, 264 N.W.2d at 783 ("We start with the premise any prosecution within the statute of limitations is timely . . . .").[2]

On our de novo review of this constitutional claim, we are not persuaded that Smith established actual prejudice.  Smith and his counsel were given the opportunity to present testimony at the hearing on the motion to dismiss, and instead chose only to present argument.  As Smith's attorney stated candidly,

> I think the delay has been purposeful.  It's been to his detriment.  Exactly what detriment, I don't know at this point, because I've not been able to meet that much with Mr. Smith regarding any possible defense he may have.  It's in part because I just met with him today, because I'm not certain, without being able to prepare or not, whether or not he might say something inappropriate, as far as testifying today.

While the district court referred to "spoliation" and "faded memories" in its ruling, it did so in general terms.  These kinds of generalized claims do not establish a due process violation.  *See Brown*, 656 N.W.2d at 363.  Likewise, the district court's observations that the State offered "no excuse" or "no justification" for its delay—while accurate and somewhat troubling—do not put the burden in the right place.  They do not account for Smith's initial obligation to show that he was actually prejudiced.  *See id.* & n.6; *see also State v. Williams*, 574 N.W.2d 293, 300 (Iowa 1998)

---

[2]The statute of limitations for indictable offenses requires an indictment or information to be filed within a certain time period of the offense, typically three years. *See* Iowa Code § 802.3.

(finding that six months of unexplained delay did not violate due process when the defendant did not show actual prejudice).

On appeal, Smith advances an argument that the State's delay denied him an "opportunity" for concurrent sentences. Smith's theory is that if the State had moved forward earlier on the second-degree robbery charge involving M.B., he could have argued that any sentence on that robbery, if he were convicted, should run concurrent with the existing sentence he was already serving.[3]

We have said that if the defendant establishes that a delay "was occasioned *solely* to avoid the possibility of concurrent sentencing, we would not condone such a late prosecution." *State v. Sunclades*, 305 N.W.2d 491, 495 (Iowa 1981) (emphasis added), *overruled on other grounds in Williams*, 895 N.W.2d 856. In *Trompeter*, we explained in detail how a prosecutor's decision to delay charging the defendant resulted in exposure to the adult criminal justice system that the defendant would not otherwise have had. 555 N.W.2d at 471.

Smith has made no such showing.[4] Smith has not demonstrated that the State delayed prosecuting the robbery case solely to avoid

---

[3]The record is somewhat sketchy, but it indicates that Smith was serving a sentence for a burglary of some kind at the Fort Dodge facility when he filed his motions asking to address the alleged robbery of M.B. The record also indicates that Smith had two prior third-degree burglary convictions, one from 2012 and the other from 2016. (As noted above, when the State got around to charging Smith for the robbery, it sought a habitual offender enhancement.) The record also indicates that Smith had prior probation violations and a charge of voluntary absence from custody. Finally, the record indicates that Smith was taken into custody "on an unrelated matter" approximately two weeks after allegedly robbing M.B. This unrelated matter could have been a probation or parole violation. Smith self-reported that he "has an extensive criminal history."

[4]The concurrence in part and dissent in part claims there is an issue of error preservation. We disagree. Smith moved to dismiss the prosecution on due process grounds and was granted a hearing on his motion. At the hearing, Smith was asked about and given the opportunity to demonstrate prejudice. This would include any sentencing-related prejudice. Smith failed to show prejudice, a failure that we conclude

concurrent sentences. Nor has he demonstrated that any sentence on the robbery if he were convicted would likely have been imposed so as to be concurrent with his existing sentence. The district court did not mention even a possibility of concurrent sentences in its dismissal order below.

A somewhat comparable case is *State v. Clemons,* in which the Ohio Court of Appeals found no due process violation and reversed a trial court's dismissal of an indictment. 2 N.E.3d 930, 935–36 (Ohio Ct. App. 2013). The state issued an arrest warrant for the defendant in August 2009 but did not arrest him on the warrant or indict him until March 2011 upon his release from prison on other charges. *Id.* at 932. The court determined that the defendant's claims of possible prejudice due to the faded memories of witnesses and the lost opportunity for concurrent sentences were insufficient. *Id.* at 935–36. Although the state seemingly "mishandled Clemons's case," the court reasoned that "because Clemons failed to present evidence of substantial prejudice, the state has no burden of producing evidence of a justifiable reason for the 20-month preindictment delay." *Id.* at 936.

Another fairly similar case is *Commonwealth v. Butler*, 949 N.E.2d 936 (Mass. App. Ct. 2011), *aff'd*, 985 N.E.2d 377 (Mass. 2013). In 1991, a criminal complaint was filed charging the defendant with rape and burglary and an arrest warrant was issued. *Id.* at 937. However, the defendant was not arrested or brought to court on these charges until 1998. *Id.* at 937. In the meantime, the defendant had been convicted and sent to prison on other charges. *Id.* The defendant was notified of the outstanding warrant and signed a form requesting that the district court provide him with a speedy trial. *Id.* at 938. Yet his request "was never

---

is fatal to his claim. Having failed to demonstrate prejudice, Smith is not entitled to another hearing to *again* try to demonstrate prejudice.

docketed and no action was taken" until years later when the defendant was released from custody. *Id.* After finding no speedy trial violation, the court quoted precedent requiring a showing of "actual prejudice" at a minimum for a due process violation and observed that "[t]he defendant does not challenge the motion judge's finding that his due process claim is without merit." *Id.* at 942.[5]

In *State ex rel. Knotts v. Facemire*, the West Virginia Supreme Court overruled its own precedent and decided as follows:

> Courts are uniformly in agreement that actual prejudice must be proven to advance a due process claim for preindictment delay. Accordingly, we hold that in order to maintain that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the defendant must show actual prejudice.

678 S.E.2d 847, 854 (W. Va. 2009) (citation omitted); *see also* 41 Am. Jur. 2d *Indictments and Informations* § 56, at 739 (2015) ("Where a defendant fails to show actual substantial prejudice in alleging a violation of due process based on a preindictment delay, the inquiry ends, and the reasons for the delay need not be addressed.").

---

[5]*See also U.S. v. Madden*, 682 F.3d 920, 929–30 (10th Cir. 2012) (citing numerous cases holding that a lost chance for concurrent sentences is too speculative to establish prejudice for due process purposes); *State v. Keliiheleua*, 95 P.3d 605, 610 (Haw. 2004) ("[L]ost opportunities for concurrent sentencing, parole, and loss of parental rights, as asserted [t]herein, do not affect a defendant's ability to present an effective defense, and thus, do not constitute actual substantial prejudice to a defendant's due process right to a fair trial."); (second alteration in original) (quoting *State v. Higa*, 74 P.3d 6, 12 (Haw. 2003)); *Jones v. State*, 607 P.2d 116, 117 (Nev. 1980) (per curiam) ("[T]here is nothing in the record which suggests that the state deliberately delayed filing charges in order to gain a tactical advantage. The loss of the possibility of an additional two years of concurrent time is not sufficient prejudice to establish a denial of due process."); *State v. Rice*, 57 N.E.3d 84, 91–92 (Ohio Ct. App. 2015) (citing numerous cases for the proposition that "the theoretical and speculative loss of the opportunity for the defendant to serve the sentence on the pending charge concurrently with the sentence in another case" is insufficient prejudice to establish a due process violation).

For the reasons stated, the trial information should not have been dismissed on due process grounds without a showing of actual prejudice.

**C. Due Process Under the Iowa Constitution**. On appeal, Smith asks us to overlook the absence of prejudice by adopting a different, "totality of the circumstances" standard under the Iowa Constitution's due process clause. *See* Iowa Const. art. I, § 9. There is a potential concern whether this issue has been preserved. Smith argued only "due process" below. He cited only *Trompeter* and *Brown*, which mention exclusively the United States Constitution and contain no references to the Iowa Constitution. The district court's ruling mentioned only the Fifth Amendment. *Cf. State v. Coleman*, 890 N.W.2d 284, 286 (Iowa 2017) ("[W]hen a party brings a constitutional claim but fails to identify whether the party is proceeding under the Iowa or the Federal Constitution, claims under both the Iowa and the Federal Constitutions are preserved."); *see also id.* at 303 (Waterman, J., dissenting) ("[L]ess has become more.").

In any event, as the State points out, we have previously required actual prejudice for preindictment delay claims under *both* the federal *and* the Iowa Constitutions. *See State v. Isaac*, 537 N.W.2d 786, 788 (Iowa 1995). In *State v. Isaac*, we rejected both federal and state due process claims and explained,

> Isaac does not present any evidence as to how the delay in charging him was unreasonable or how it actually prejudiced him. He says only that "his ability to present a defense has been hindered with the passage of time. Memories are not as clear and finding witnesses becomes more and more difficult."
>
> This vague allegation does not suffice to support a due process challenge. . . .
>
> Isaac makes no showing that the State delayed to gain a tactical advantage over him. We will not fill this void in the evidence by presuming otherwise.

> Nor does Isaac present any evidence as to how the delay actually prejudiced him. . . .

> We conclude the court could not have sustained Isaac's motion to dismiss on due process grounds.

*Id.* Therefore, even if a state constitutional claim were duly raised below, we would not reach a different result under our precedent.

**D. Speedy Trial.** We now turn to speedy trial. At the end of its dismissal order, the district court said that Smith's "speedy trial rights have also been violated." It is not entirely clear what the district court meant by this isolated statement. Smith did not allege below a constitutional speedy trial violation under the Sixth Amendment or article I, section 10 of the Iowa Constitution. He did allege, in a conclusory way, that rule 2.33(2)(*b*) had been violated. We agree with the State that the sentence in the district court's order was at most a finding of a rule violation.

On our review, we find no violation of rule 2.33(2)(*b*). That rule is triggered by the filing of an indictment or information, which had not yet occurred. Accordingly, the dismissal order cannot be sustained on this ground.

**E. Dismissal in the Furtherance of Justice**. Finally, Smith argues in his appellate brief that we can sustain the dismissal of this case under rule 2.33(1). This rule provides,

> The court, upon its own motion or the application of the prosecuting attorney, in the furtherance of justice, may order the dismissal of any pending criminal prosecution, the reasons therefor being stated in the order and entered of record, and no such prosecution shall be discontinued or abandoned in any other manner. Such a dismissal is a bar to another prosecution for the same offense if it is a simple or serious misdemeanor; but it is not a bar if the offense charged be a felony or an aggravated misdemeanor.

18

Nobody raised this ground below, and it clearly was not a basis for the district court's order. In fact, we have said that rule 2.33(1) does not apply to a dismissal on *the defendant's* motion. *State v. Lasley*, 705 N.W.2d 481, 492 (Iowa 2005). We have also said that "dismissal will not be an appropriate remedy in the overwhelming majority of cases." *Piper*, 663 N.W.2d at 903. In addition, before a district court may exercise its sua sponte dismissal authority under rule 2.33(1), it must afford both sides fair notice of its intention to do so. *State v. Brumage*, 435 N.W.2d 337, 340 (Iowa 1989). In *State v. Brumage*, we also approved New York precedent that this dismissal authority "should be 'exercised sparingly' and only in that 'rare' and 'unusual' case where it 'cries out for fundamental justice beyond the confines of conventional consideration.' " *Id.* (quoting *People v. Insignares*, 491 N.Y.S.2d 166, 175 (N.Y. App. Div. 1985) (per curiam)). We further held that "our trial court should dismiss only after considering the substantive rights of the defendant and the interests of the state." *Id.* at 341. In other words, a balancing of relative interests was required, including such matters as

> (1) weight of the evidence of guilt or innocence; (2) nature of the crime involved; (3) whether defendant is or has been incarcerated awaiting trial; (4) whether defendant has been sentenced in a related or similar case; (5) length of such incarceration; (6) possibility of harassment; (7) likelihood of new or additional evidence at trial; (8) effect on the protection to society in case the defendant should actually be guilty; (9) probability of greater incarceration upon conviction of another offense; (10) defendant's prior record; (11) the purpose and effect of further punishment; and (12) any prejudice resulting to defendant by the passage of time.

*Id.* (quoting *State v. Lundeen*, 297 N.W.2d 232, 236 (Iowa Ct. App. 1980)). The district court did not engage in such balancing here. On this appeal, we cannot sustain the district court's dismissal order under rule 2.33(1).[6]

\* \* \*

We have long recognized that the defendant's incarceration is not a sufficient justification for failing to bring the defendant to trial on other charges. *See Hottle v. District Court*, 233 Iowa 904, 910, 11 N.W.2d 30, 33 (1943). The State seems to have disregarded that precept here. Yet we must also be mindful of the United States Supreme Court's admonition:

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function."

*United States v. Lovasco*, 431 U.S. 783, 790, 97 S. Ct. 2044, 2049 (1977) (quoting *Rochin v. California*, 342 U.S. 165, 170, 72 S. Ct. 205, 209 (1952)). In the end, we cannot allow our disappointment with prosecutorial foot-dragging to push the law in a direction where it will not go.

## IV. Conclusion.

For the foregoing reasons, we reverse the district court's order dismissing this case and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except Christensen, C.J., who concurs specially in division III.E, and Appel, J., who concurs in part and dissents in part.

---

[6]The special concurrence suggests that a strong case exists for dismissal pursuant to rule 2.33(1). The majority of this court has reached no such conclusion.

**CHRISTENSEN, Chief Justice (concurring specially).**

Though I agree with the majority, I write separately regarding Deaonsy Smith's Iowa Rule of Criminal Procedure 2.33(1) claim to remind district courts that we have an obligation to monitor similar situations, correctly apply rules to ensure fairness to all parties when necessary, and ensure that the pretrial process in each case is just and efficiently managed. *Cf. In re Carstensen*, 316 N.W.2d 889, 893 (Iowa 1982) ("A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials." (quoting Iowa Code of Judicial Conduct Canon 3(B)(1))); Chief Justice John G. Roberts, Jr., *2015 Year-End Report on the Federal Judiciary* 10–11 (2015), https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf [https://perma.cc/8ELX-W38X] ("Judges must be willing to take on a stewardship role, managing their cases from the outset rather than allowing parties alone to dictate the scope of discovery and the pace of litigation. Faced with crushing dockets, judges can be tempted to postpone engagement in pretrial activities. Experience has shown, however, that judges who are knowledgeable, actively engaged, and accessible underline early in the process are far more effective in resolving cases fairly and efficiently, because they can identify the critical issues, determine the appropriate breadth of discovery, and curtail dilatory tactics, gamesmanship, and procedural posturing.").

This case can only be described as a series of unfortunate events. The State had Smith in its custody on unrelated charges within a week of the crime at issue, yet without explanation, it delayed actually arresting Smith for twenty-one months—eight of which occurred between the alleged

crime and the filing of the criminal complaint and another thirteen of which passed between the criminal complaint and Smith's arrest. During that twenty-one-month period, Smith attempted to resolve the case multiple times by filing a written arraignment and plea of not guilty (which the district court rejected because no trial information had been filed), filing an application for appointed counsel (denied), writing a letter addressed to the court explaining his situation that again asked for appointment of counsel to facilitate a speedy trial (also denied), and filing multiple motions to dismiss (all denied). The district court largely ignored the situation by continually denying Smith's requests until it finally appointed him counsel on August 22, 2019, and set a hearing. Perhaps motivated by the district court's acknowledgment of Smith's case, the State finally served an arrest warrant on Smith on September 12, 2019, and filed a trial information charging Smith on September 17, 2019, for events that allegedly occurred in 2017.

Although the State did not file a trial information until September 2019, the district court was aware of Smith's frustration and unsuccessful attempts to get the court's attention much earlier. As discussed in division III.A of the majority's opinion, I agree an arrest is necessary to trigger speedy indictment. And of course the filing of a trial information officially opens the courthouse doors and makes the case an official part of the docket. But when a person repeatedly seeks the attention of the court as Smith did in this case, it is incumbent upon the court to take reasonable steps to provide fundamental assistance. I understand that motion-day dockets are chock-full of more cases than time allots and that our courts are frequently understaffed on those whirlwind days; however, it takes just a few short moments to review a motion filed by an incarcerated, self-represented litigant and determine whether perhaps a hearing should be

set rather than summarily dismissing repeated filings by the same individual. In this case, the judge who referred to the State's lack of attention as "unconscionable" and dismissed Smith's case is the same judge who summarily denied one of Smith's prior applications for court-appointed counsel.

Smith's case seems to epitomize the sort of "rare" and "unusual" case worth dismissing in the furtherance of justice under rule 2.33(1) because it "cries out for fundamental justice beyond the confines of conventional consideration." *State v. Brumage*, 435 N.W.2d 337, 340 (Iowa 1989) (quoting *People v. Insignares*, 491 N.Y.S.2d 166, 175 (N.Y. App. Div. 1985)). Unfortunately for Smith, though, I must join the majority in reversing the district court's dismissal because the district court failed to follow the proper procedure. To correctly dismiss Smith's case upon its own motion under rule 2.33(1), the district court simply had to provide the parties with "fair notice of its intention to do so" and "a full hearing . . . to permit them to argue the merits of dismissal" along with the reasons supporting the dismissal in the furtherance of justice in its order. *State v. Lundeen*, 297 N.W.2d 232, 235 (Iowa Ct. App. 1980); Iowa R. Crim. P. 2.33(1). Had the district court followed rule 2.33(1), its intended outcome (dismissal) may have survived appellate scrutiny for some of the same reasons the district court cited in its order.

As the majority enumerates, *State v. Brumage* sets out several interests for the district court to balance in those rare cases that may warrant dismissal in the furtherance of justice under rule 2.33(1). *See Brumage*, 435 N.W.2d at 341. While the district court in this case did not discuss rule 2.33(1) in its order or provide any indication that it was relying on this rule in dismissing Smith's case, its rationale for the dismissal shows the court at least unintentionally considered some of these

interests. For example, the district court discussed the evidence of Smith's guilt, noting,

> The State had the Defendant in custody within a week of the events occurring. The State had buccal swabs. The State had the Defendant's clothing. The [S]tate had traffic cam video. The State had evidence from a bank ATM record to corroborate the allegation that the Defendant made the named victim take her to her bank and withdraw money.

The district court's rationale also incorporates other factors for consideration, explaining:

> There is spoliation of evidence now. Witnesses' memories have faded now. His ability to assert an alibi has been extinguished. His ability to defend the allegations has been compromised or even destroyed due to the delay.
>
>    . . . The State offered no reason why the complaint was not filed in December of 2017. It offered no justification for waiting to file the complaint eight (8) months later. It offered no excuse for not having the warrant executed while the Defendant was in the custody of the Director of Adult Corrections
>
>    . . . The delay was unconscionable based on the facts recited herein.

Of course, some of these factors, like the evidence of Smith's guilt in this case, cut against dismissal in this case. That does not mean a full balancing of all relative interests could not still result in dismissal. In any event, I am not saying a dismissal of Smith's case would have been appropriate under rule 2.33(1), nor will I analyze all of the *Brumage* factors to build such a case. Perhaps the State did have a legitimate reason for the delay, but we are only left to speculate because the district court failed to develop the proper record through notice and a hearing on this issue. Based on the information before us, albeit limited, this appears to be a strong case for dismissal in the furtherance of justice but for the court's failure to follow rule 2.33(1).

The alleged crime at issue in this case occurred in 2017. Here we are in 2021, and this seemingly straightforward criminal case still has yet to be resolved. " 'Justice delayed is justice denied,' and regardless of the antiquity of the problem and the difficulties it presents, *the courts and the bar must do everything possible to solve it.*" *Dep't of Gen. Servs. v. R.M. Boggs Co.*, 336 N.W.2d 408, 410 (Iowa 1983) (quoting *Gray v. Gray*, 128 N.E.2d 602, 606 (Ill. App. Ct. 1955)).

In spite of what appears to be a strong case for dismissal by the court sua sponte, I must regrettably join the majority's reversal of the district court's dismissal order because the district court did not follow rule 2.33(1). In situations like this, courts cannot join in the game of kick the can and then feign surprise that the can ended up miles away.

#19–2011, *State v. Smith*

**APPEL, Justice (concurring in part and dissenting in part).**

I concur in part and dissent in part.

**I.  Introduction.**

**A.  Constitutional Dimension of Speedy-Trial-Type Issues.**  In dealing with significant constitutional claims, it is helpful to begin with a general understanding of the nature of the constitutional provision and the interests that it protects.  At the outset, it should be recognized that in this case, although we deal with constitutional nuance (hopefully), we are not considering mere legal technicalities.  As noted by the United States Supreme Court, the right to a speedy trial is "one of the most basic rights preserved by our Constitution."  *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S. Ct. 988, 995 (1967).

Speedy trial provisions serve multiple purposes.  As noted by the United States Supreme Court, the purposes include lessening the time of incarceration of a person prior to trial, reducing the pretrial impairment of liberty of a defendant who has been released on bail, and limiting the possibilities that long delay will impair the ability of an accused to defend himself.  *See United States v. Ewell*, 383 U.S. 116, 120, 86 S. Ct. 773, 776 (1966).

Specifically, we deal with a person who is imprisoned but who has not been brought to trial expeditiously.  As noted by the Supreme Court:

> [T]he possibilities that long delay will impair the ability of an accused to defend himself' are markedly increased when the accused is incarcerated in another jurisdiction.  Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired.  And, while 'evidence and witnesses disappear, memories fade, and events lose their perspective,' a man isolated in prison is powerless

to exert his own investigative efforts to mitigate these erosive effects of the passage of time.

*Smith v. Hooey*, 393 U.S. 374, 379–389, 89 S. Ct. 575, 578 (1969) (footnote omitted) (quoting Note, *Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions*, 77 Yale L.J. 767, 769 (1968)). These observations apply not only specifically to speedy trial claims but also to due process and rule-based claims designed to ensure that criminal charges against a defendant are promptly resolved.

**B. Overview of Claims Raised in This Case.** At the outset, it is important to distinguish among the claims presented in this case. Deaonsy Smith's first claim is raised under Iowa Rule of Criminal Procedure 2.33(2). This is a rule designed to implement speedy trial principles in Iowa. The rule declares that "[i]t is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties." *Id.*

The rule has two time limitations. The rule provides that an adult "arrested for the commission of a public offense" should be indicted within forty-five days "unless good cause to the contrary is shown or the defendant waives [speedy indictment]." *Id.* r. 2.33(2)(*a*). The rule further provides that "a defendant indicted for a public offense" who has not waived the right to a speedy trial shall "be brought to trial within 90 days" of the indictment unless good cause is shown. *Id.* r. 2.33(2)(*b*). The remedy for breach of the deadlines under the rule is dismissal. *Id.* at 2.33(2)(*a*)–(*b*).

A second type of claim raised by Smith relates to his constitutional claim that the preaccusatorial delay in bringing formal charges against him violated due process of law. The United States Supreme Court elaborated on this type of due process claim in *United States v. Marion*,

404 U.S. 307, 313–26, 92 S. Ct. 455, 459–66 (1971), and *United States v. Lovasco*, 431 U.S. 783, 788–797, 97 S. Ct. 2044, 2048–2052 (1977). As will be seen below, in order to establish a due process violation related to prosecutorial delay, most lower courts have required a defendant show that some kind of prejudice arose from the delay and that the delay was unreasonable under the circumstances. The contours of each of these two prongs are not well established. There is, for example, some question regarding what exactly constitutes sufficient prejudice and, if sufficient prejudice is found, how the reason for the delay is analyzed to determine if a violation is present. On appeal, Smith asserts that his due process rights were violated under both the Fifth Amendment and article I, section 9, of the Iowa Constitution.

A third type of claim raised by Smith is a constitutional claim based on speedy trial concepts arising from the delay between his "arrest" and his trial. The leading speedy trial cases of the United States Supreme Court under the Sixth Amendment are *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972), and its progeny. *Barker* announced a four factor test for considering speedy trial challenges, the four factors to be considered are: (1) the length of the delay, (2) the State's reason for the delay, (3) whether the defendant demanded a speedy trial, and (4) prejudice against the defendant. *Id.* at 530, 92 S. Ct. at 2192. There is a substantial body of state and federal law applying speedy trial concepts. On appeal, Smith claims that his speedy trial rights were violated under both the Sixth Amendment and article I, section 10, of the Iowa Constitution.

Although they are related, due process and speedy trial claims have different features. For example, in most of the caselaw, prejudice is required for a due process violation, while prejudice may be presumed as a result of lengthy delays under speedy trial concepts. Because of the

difficult challenge of showing prejudice, enforcement of due process concepts may be more difficult for a defendant than enforcement of speedy trial rights.

The due process and speedy trial clauses are, of course, open textured and subject to plausible alternative interpretations. Courts are thus left with interpretive choices rather than inexorable constitutional commands in applying them. Under both clauses, courts have traditionally utilized multi-factor tests with some ambiguity as to their application. We should thus be very careful not to announce sweeping statements on the law in the absence of full-blown advocacy and well developed records.

A fourth question presented in this appeal is whether, aside from all of the complicated constitutional arguments, the district court has the inherent power to dismiss the action under Iowa Rule of Criminal Procedure 2.33(1). This rule vests the district court with discretion to dismiss criminal actions "in the furtherance of justice." *Id.*

## II. Speedy Indictment Under Iowa Rule of Criminal Procedure 2.33(2).

Iowa Rule of Criminal Procedure 2.33(2) provides a rule-based framework for speedy trial issues. The rule declares that "[i]t is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties." *Id.* The rule generally provides, among other things, that "[w]hen an adult is arrested for the commission of a public offense," an indictment must be found within forty-five days. *Id.* r. 2.33(2)(*a*).

The majority correctly notes that in the 4–3 decision of *State v. Williams*, 895 N.W.2d 856, 867 (Iowa 2017), the court announced a new approach to the speedy indictment rule. The history of Iowa's speedy trial

rule is discussed at length in both the majority and minority opinions. *Id.* at 860–67; *id.* at 870–73 (Hecht, J., dissenting). Prior to January 1, 1978, the deadline for indictment provided in the Iowa Code ran from the date a person was "held to answer." *See* Iowa Code § 795.1 (1975); *Williams*, 895 N.W.2d at 860 (majority opinion). A new rule was promulgated, however, which declared that the triggering point was the "arrest" of the offender for the crime, not the date a person was held to answer. *See State v. Schmitt*, 290 N.W.2d 24, 26–27 (Iowa 1980), *overruled on other grounds in Williams*, 895 N.W.2d 856. Obviously, for those concerned with text, the change from "held to answer" to "arrest" was significant. In *State v. Schmitt*, we recognized the change in language and held that the time for a speedy trial under the statute (and later under the court rule) ran from the time of the "arrest," as it is commonly understood, not from proceedings where a defendant was "held to answer" under prior law. *Id.* Thirty years later, we reaffirmed the existing approach in *State v. Wing*, 791 N.W.2d 243, 247–52 (Iowa 2010), *overruled on other grounds in Williams*, 895 N.W.2d 856.

In *Williams*, the 4–3 majority took a different course. The majority overturned *Schmitt* and *Wing* and essentially returned the law to its pre-1978 state. *Williams*, 895 N.W.2d at 866. Under *Williams*, an "arrest" does not occur until a defendant is arrested on a charge and taken to a magistrate for an initial appearance. *Id.* at 867. I joined the court opinion in *Wing* and Justice Hecht's dissent in *Williams*. Under *Williams*, however, it is clear that Smith's claim for violation of Iowa Rule Civil Procedure 2.33(2) fails.

But in dissent, Justice Hecht observed that "a perverse incentive arises for law enforcement officers to delay prosecutions—conduct that is antithetical to the important goals of speedy trials." *Id.* at 872 (Hecht, J., dissenting). The prosecution can delay triggering speedy trial rights under

the new *Williams* approach by simply withholding court processes over which the prosecution has complete control.

Having provided the State with the unilateral power to control the timing of the event which triggers speedy trial considerations, it is critical that this court provide meaningful oversight of the exercise of that unilateral power. We cannot vest the State with the unilateral power to determine the timing of triggering events for speedy trial rights and simply walk away.

And there are troublesome potential scenarios. Suppose, for instance, police investigate two crimes against a defendant. The prosecutor proceeds on the first crime but using his discretion does not initiate proceedings on the second crime until after the defendant served his prison sentence arising from the first offense. Such a unilateral approach by the prosecutor would deprive the defendant of an opportunity to seek to have the sentences for the crimes run concurrently. Thus, through unilateral action, the prosecutor has the capability of assuming the role of judge by deciding that concurrent sentences are not available simply through delaying "arrest" on the second crime until the prison sentence on the first crime is served. *See Hooey*, 393 U.S. at 378, 89 S. Ct. at 577 (describing the problem).

Such an approach would be anathema to speedy trial values. But I must concede that such a process would not violate Iowa Rule of Criminal Procedure 2.33(2) as reconfigured by this court in *Williams*, where facts don't matter as long as the formal filing of a charge has not occurred. But while relief is not available under the rule as presently interpreted, that does not foreclose a district court judge from, on a proper record, exercising discretion to dismiss a charge in the furtherance of justice under Iowa Rule of Criminal Procedure 2.33(1).

**III. Federal Due Process Claim Based on Preaccusatorial Delay.**

**A. Introduction.** On Smith's due process claim of excessive preaccusatorial delay in violation of the Fifth Amendment of the United States Constitution, the federal courts have generally adopted a two-part test. First, a defendant claiming preaccusatorial delay must make a showing of actual prejudice. Second, the delay must be unreasonable. However, there are a number of troublesome issues behind the ordinary formulation. What is "actual prejudice"? And what is the substantive content of the second prong related to reasons for the delay? And how does the first prong relate to the second prong?

**B. Impact of Preaccusatorial Delay: Generalized Claim of Spoliation and Faded Memories at Trial.** Smith claims that the inordinate delay in this case impacted his ability to present a defense at trial. In terms of showing particularized prejudice at a subsequent trial caused by preaccusatorial delay, the defendant faces a difficult challenge. For example, although we know that memory never improves over time, and always degrades, how does the defendant demonstrate what he cannot remember or show what a witness has forgotten due to the passage of time?

Yet, in contrast to cases involving speedy trial considerations, the federal preaccusatory caselaw is unforgiving on this point. Under the federal caselaw, a particularized showing of specific impact on the trial is generally required. *See Marion*, 404 U.S. at 322, 92 S. Ct. at 464. I am not sure this particularized principle is entirely correct or should always be applicable, but I agree with the majority, as I must, that under the federal preaccusatory due process caselaw, a generalized claim of "spoliation" or "faded memories" is inadequate. I therefore concur with the

majority on the federal due process issue related to the impact of the delay on trial.

**C. Impact of Preaccusatorial Delay: Possibility of Consecutive Sentences**.

1. *Issue preservation.* The majority addresses the troublesome scenario raised in the introduction to this opinion, namely, whether Smith may claim that the preaccusatorial delay amounted to a due process violation because it deprived him of the possibility of consecutive sentences for his separate crimes. This issue was not presented to the district court below but is raised on appeal. The majority chooses to bypass issue preservation and address the merits of the claim. The majority canvasses the record on an issue not raised in the district court and declares, with conviction, that the record is inadequate to support the unraised claim. It is not surprising, however, that the record is deficient on a claim not raised. Instead of addressing the merits on what is a difficult issue with several troublesome aspects, I would follow our issue preservation precedents and decline to address it. *See, e.g., State v. Prusha,* 874 N.W.2d 627, 629–30 (Iowa 2016). Because of the majority's disposition, however, I address the question on the merits.

2. Sunclades *and* Trompeter. The majority makes a number of choices in this case based upon the apparent authority of *State v. Sunclades,* 305 N.W.2d 491 (Iowa 1981), *overruled on other grounds in Williams,* 895 N.W.2d 856, and *State v. Trompeter,* 555 N.W.2d 468 (Iowa 1996). In my view, these cases do not inform the issue very much, and to the extent they do, they cut against the majority's approach.

In *Sunclades,* the court stated as an illustrative example that "[h]ad [the] defendant established that the preindictment delay was occasioned solely to avoid the possibility of concurrent sentencing, we would not

condone such a late prosecution." 305 N.W.2d at 495. From this brief sentence, the majority discovers a broad rule of law: in order to show actual prejudice from preaccusatorial delay arising from the lost opportunity for concurrent sentences, the defendant bears the burden of proving that the "sole" reason of the delay was avoiding the possibility of concurrent sentencing and must show it is "likely" that a concurrent sentence would have been imposed by a sentencing court if the opportunity was presented.

First, the statement in *Sunclades* was dicta. Here is the claim advanced in *Sunclades* according to the court:

> Defendant contends that his indictment on the charges at issue constitutes a denial of due process because the sequence of events violated his sixth-amendment right to effective assistance of counsel and, therefore, his ability to intelligently exercise his fifth-amendment right against self-incrimination. He asserts that, in advising a client during trial, counsel has a right to assume that no further charges will be filed after the client testifies, and if the State is allowed to indict and try a defendant and subsequently indict the defendant on other charges arising from the same incident, the defendant would be inhibited from testifying for fear that the State would use the testimony to bring additional charges.

*Id.* at 494. That's it. So the question of whether actual prejudice may arise from the lost opportunity to seek a concurrent sentence was not presented in the case.

Further, unlike the majority, the *Sunclades* court said the defendant must establish that the prosecution's delay was to avoid "the *possibility* of concurrent sentenc[es]." *Id.* at 495 (emphasis added). It did not, like the majority says today, declare that the defendant must show that a concurrent sentence is "likely." The majority is thus not applying *Sunclades* but is choosing to give the wrench another turn by replacing the term "possibility" with "likely." That is a big difference.

As the majority observes, the *Sunclades* observation was quoted in *Trompeter*, 555 N.W.2d at 471. In *Trompeter*, this court held that the preaccusatorial delay of three years to permit the prosecution to try the defendant as an adult violated due process. *Id.* at 469, 471. The *Trompeter* court emphasized, however, that it was undisputed that the purpose of the delay was to permit trial of the defendant as an adult. *Id.* at 469. In *Trompeter*, the passing language in *Sunclades* about a delay that was "solely" occasioned by vindictiveness was merely an example. *Id.* at 471. It did not establish a nearly impossible test. *Id.* Further, like the *Sunclades* dicta, the district court observed that many courts have held that the "delay to avoid the *possibility* of concurrent sentencing is not a legitimate reason for delay." *Id.* (emphasis added). Like *Sunclades*, the *Trompeter* court utilized the concept of "possibility" and not the "likely" language employed by the majority. *Id.* The majority thus departs from the explicit language used by *Trompeter* as well as the language in *Sunclades*.

In addition, again looking to the language of the cases, *Trompeter* declares that to prove preaccusatorial delay violated due process, the defendant must show, among other things, that the delay was "unreasonable." *Id.* at 470. "Unreasonable" is a broad term that may be proved in a number of different ways. The majority in this case requires that if a defendant is actually prejudiced by being deprived of concurrent sentences, it must prove that the prosecution's sole reason for the delay was avoiding concurrent sentences. But the general framework established in *Trompeter* permits the defendant more broadly to show that the delay was "unreasonable." *Id.*; *see also State v. Isaac*, 537 N.W.2d 786, 788 (Iowa 1995). Thus, the majority chooses to give the caselaw one more hard turn of the wrench.

In short, there are a number of unresolved problems lurking behind the question of whether a defendant has established a preaccusatorial due process problem arising from the loss of the possibility of concurrent sentences. First, does the defendant have the burden of showing that it was "likely" that a court would have provided concurrent sentences if there had been no preaccusatorial delay on the second charge? Second, who has the burden of showing the reason for the preaccusatorial delay? Third, must the defendant prove that prosecutorial delay is the "sole" reason for the delay? And fourth, must a defendant show that the "sole" motivation was prosecutorial desire to prevent concurrent sentencing?

3. *Analysis of the impact of preaccusatorial delay on concurrent sentences.* On the first question, there is some authority for the proposition in the majority opinion that a defendant must make some kind of showing that he would have received concurrent sentences but for the delay. But that seems a very difficult task. How do you show that a highly discretionary choice is "likely"? It probably depends upon the facts of the crimes but also depends upon what is turned up in a presentence report and upon the sentencing philosophy of a particular judge.

As a result, I would apply the "possibility" language of *Sunclades* and *Trompeter* and find that the possibility of receiving concurrent sentences is sufficient to establish actual prejudice and require further inquiry into the prosecution's reason for the delay. There is ample support for this approach in the caselaw. *See, e.g., Turner v. State*, 545 S.W.2d 133, 138–39 (Tex. Crim. App. 1976) ("[The defendant] was deprived of the possibility of receiving a sentence at least partially concurrent with his federal sentence . . . ."); *State v. Simon*, 928 P.2d 449, 451 (Wash. Ct. App. 1996) (characterizing as prejudice "a lost ability to serve partially concurrent sentences"); *Hadley v. State*, 225 N.W.2d 461, 467 (Wis. 1975)

("[E]ven though a defendant is otherwise detained, the failure to have a pending charge brought to trial completely eliminates the possibility that concurrent sentences could be imposed."). Of course, a defendant does not prevail by showing that he lost an opportunity for concurrent sentences, the defendant is only entitled to advance the inquiry into the second element of preaccusatorial due process, namely, the reasons for the delay.

On the second question related to reasons for the delay, I would first consider who has the burden of proof on the issue. While the defendant has the burden of proof generally on a preaccusatorial due process claim, in my view, on the question of the reason for the preaccusatorial delay, the prosecution has at least the burden of production, namely, to provide the court with a reason for the preaccusatorial delay. *See, e.g.*, *United States v. Claxton*, 766 F.3d 280, 294–95 (3d Cir. 2014) (holding that the burden of showing reason for delay rests with government); *United States v. Banks*, 761 F.3d 1163, 1183 (10th Cir. 2014) (same); *Bailey v. State*, 78 So.3d 308, 321 (Miss. 2012) (en banc) (holding that when a defendant shows presumptively prejudicial delay, the burden shifts to state to show reason for delay). If the prosecution stands mute, an inference may be drawn against the government. The notion of putting the burden of production on the State is reasonable, as ordinarily the defendant does not have information related to the reasons for preaccusatorial delay within his control. *See, e.g.*, *United States v. New York, New Haven, & Hartford R.R.*, 355 U.S. 253, 256 n.5, 78 S. Ct. 212, 214 n.5 ("The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."); *cf. Breese v. City of Burlington*, 945 N.W.2d 12, 23 (Iowa 2020) ("Given the function of the state-of-the-art defense, placing the burden on the party

challenging the defense is illogical because the defendant will normally have access to information regarding when the improvement was made.").

Once the prosecution has met its burden of production, the defense would be entitled to seek to establish that the purpose of the delay was unreasonable or that, as a matter of fact, the purpose of the delay was something other than that stated by the prosecution. Although not directly addressed, the majority opinion appears to put the entire burden on the defendant. That seems quite unfair.

Third, the question arises as to what amounts to "unreasonable" delay. *Trompeter*, 555 N.W.2d at 470. Is the defendant required to prove that the delay was specifically designed to defeat his ability to seek concurrent sentences? Or, does it suffice to show that the reason for the delay was "unreasonable," caused by negligence, or, perhaps, simply without good reason? In my view, the broader view is appropriate. While the desire to cut off the possibility of concurrent sentences is a bad reason for delay, there are other equally bad reasons. The majority chooses to narrow the approach, but this makes little sense to me.

In my view, the best approach to the question of what amounts to an unreasonable delay is a three-step process. First, the court determines whether "actual prejudice" is present. Next, the court determines the reason for the delay. Finally, the court balances the actual prejudice against the reasons for the delay to determine the outcome of the issue. Under this formulation, although vindictive motivation of the prosecution might be very compelling in the balancing, it is not required.

Fourth, the question arises that if there is prosecutorial motivation to deprive a defendant of the opportunity for concurrent sentences, whether that motivation must be the "sole" reason for the delay. This requirement reminds one of the endless debating on the issue of sole

proximate cause in tort. *See generally* John G. Phillips, *The Sole Proximate Cause "Defense": A Misfit in the World of Contribution and Comparative Negligence*, 22 S. Ill. U. L.J. 1 (1997) (discussing various elaborate issues related to sole proximate cause). We can, if we choose, incorporate that debate into the bosom of our constitutional jurisprudence, but I am distinctly disinclined.

In any event, an attentive read of the *Sunclades* dicta reveals that it does not purport to establish a requirement or threshold of motivation but only provides a clear, safe example of when preaccusatorial delay would unquestionably lead to a violation of due process. *See Sunclades*, 305 N.W.2d 494–95. The dicta was not designed *to establish* an outer boundary of the claim. Instead, the dicta states an obvious example of a case well within the outer boundary of the reach of due process that, as a matter of law, presents a due process violation that does not turn on the facts or circumstances of a particular case, does not require any balancing of the cause of delay against actual prejudice, and simply presents the clearest of due process violations.

I have also burrowed into cases in our vast computer library to test the proposition that the "sole" motivation for the preaccusatorial delay must be preventing a defendant from the possibility of obtaining concurrent sentences. I did not find supportive authority for the "sole" cause theory.

In any event, I would certainly not adopt it. The State cannot prevail on a preaccusatorial delay claim by throwing in a dash of negligence, or a dime of cost savings, or an observation of how busy the prosecutor's office is, or assertions that one cumulative witness remained to be interviewed, to defeat an otherwise valid preaccusatory due process claim.

So, as they say, "it's complicated." I do not agree with the multiple choices made by the majority on the preaccusatorial delay resulting in loss of the opportunity to obtain concurrent sentences. I would not answer the questions, however, as the issue was not presented to the district court and has not been preserved. *See Prusha*, 874 N.W.2d at 629–30. But, if we are to consider the question, I dissent on the merits of the majority approach and would remand the case to the district court for further proceedings consistent with this opinion.

**IV. State Due Process Claim Based on Preaccusatorial Delay.**

On appeal, Smith presses a due process claim under article I, section 9, of the Iowa Constitution. Before the district court, he did not argue that prejudice arose from the loss of opportunity for concurrent sentences or from adverse impact on parole. As noted above, those claims are not properly before us. So, the majority offers its views on an issue not raised in the district court and not substantially briefed on appeal in order to close the door to future litigation on the issue.

**A. Impact of Preaccusatorial Delay: Generalized Spoliation and Faded Memories.**

1. *Preservation question.* With respect to the general claims of prejudice arising out of delay of trial, the record reveals that Smith in a pro se pleading made a generic claim of "due process." Then, in argument before the district court, his counsel made reference to two cases involving preaccusatorial due process: *Trompeter*, 555 N.W.2d 468, and *State v. Brown*, 656 N.W.2d 355 (Iowa 2003). Both *Trompeter* and *Brown* deal solely with violation of due process due to preaccusatorial delay under the United States Constitution. *See id.*

We have correctly stated that a generic reference to due process preserves claims under both the Iowa and Federal Constitution. *See State*

*v. Coleman*, 890 N.W.2d 284, 286–87 (Iowa 2017); *State v. Harrington*, 805 N.W.2d 391, 393 n.3 (Iowa 2011) (quoting *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011)). Although a generic claim of due process is sufficient to raise a claim under both the State and Federal Constitutions, the citation only to authority applying federal law means that, for the purposes of the case, the substantive standards of the State and Federal Constitutions are deemed to be the same, with the court reserving the right to apply the standard in a different fashion. *See Coleman*, 890 N.W.2d at 286–87; *State v. Pals*, 805 N.W.2d 767, 771–72 (Iowa 2011); *State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009).

We have no occasion in this case to decide whether a different standard might apply under the Iowa Constitution as the issue was not raised or litigated in this case. The issue also was not litigated in *State v. Isaac*, 537 N.W.2d 786. Isaac's seven-page brief makes no argument that the due process provision of article I, section 9, of the Iowa Constitution should be interpreted differently than the federal counterpart.

The issue was not presented, was not litigated, and was not decided in *Isaac*. In short, like here, the defendant in *Isaac* did not claim that a different standard should be applied under the Iowa Constitution. *Isaac* was decided in an era where the parties and this court often simply assumed that State and Federal Constitution required identical approaches. *See State v. Ochoa*, 792 N.W.2d 260, 264–67 (Iowa 2010) (discussing the history of the analysis by Iowa courts of federal and Iowa constitutional provisions). Because the issue of whether the state constitution should be interpreted differently from the Constitution of the United States was not contested in *Isaac*, any narrative in *Isaac* implying an analogous interpretation is not binding authority on the unlitigated issue. *See Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553,

614–15 (Iowa 2017) (Appel, J., concurring in part and dissenting in part) (providing citations for the proposition that where the parties agree that a legal principle is applicable, the legal principle is binding on the parties but is not a precedent precluding alternate interpretations).

And, the issue of whether the Iowa Constitution should be interpreted differently was never presented to the district court. As a result, under our established precedent, the issue of whether to apply a different standard was not preserved. *See, e.g.*, *Prusha*, 874 N.W.2d at 629–30. The majority thus offers its considered judgment on the different standard issue without the issue being preserved below.

2. *Merits.* The federal standards for prejudice in this type of claim are quite strenuous. Even reserving the right to apply the federal standard differently under the Iowa Constitution, I cannot see a path for Smith to prevail on this issue. In particular, applying federal standards outlined earlier in this opinion, *see Marion*, 404 U.S. at 322, 92 S. Ct. at 64, a claim of spoliation must have some support in the record beyond a declaration of counsel. On the issue of faded memories, whether actual prejudice has been shown on that ground would be dependent upon a totality of circumstances that considers, among other things, the length of the delay, the nature of the available evidence, and the complexity of the issues. *See id.* But while trial courts should keep in mind that a witness cannot remember what they have forgotten, a defendant must do more than merely assert the conclusion that memories have faded. I would leave open, however, the question which was not presented in this case, namely, whether we should depart from federal standards in evaluating prejudice in cases involving due process claims arising from preaccusatorial delay.

**B. Impact of Prosecutorial Delay on Consecutive Sentences**.
The discussion of this issue under my analysis of the Federal Constitution should apply here with equal force and is incorporated by reference here.

## V. Constitutional Speedy Trial.

The Sixth Amendment and article I, section 10, of the Iowa Constitution provide that an accused is entitled to a speedy trial. These claims are separate from, though related to, claims under Iowa Rule of Criminal Procedure 2.33(2)(*a*) and subsection (*b*), which are designed to implement speedy trial rights. On appeal, Smith contends that that he was denied speedy trial when the criminal complaint was filed in August 2018 but he was not arrested and formally charged until September 2019.

Under federal law, the Sixth Amendment speedy trial protections are triggered only by arrest, formal indictment, or information. *See Marion*, 404 U.S. at 320, 92 S. Ct. at 463. But a number of state supreme courts have interpreted the triggering event differently. *See, e.g., Jacobson v. Winter*, 415 P.2d 297, 300 (Idaho 1966); *People v. Mitchell*, 825 N.E.2d 1241, 1244–45 (Ill. App. Ct. 2005); *Commonwealth v. Butler*, 985 N.E.2d 377, 710–13 (Mass. 2013).

On the speedy trial issues, the majority finds that the issues were not preserved. I agree. Therefore, the question of whether we should follow federal precedent, consider the approach of other states, or even develop our own approach, is left open for another day.

## VI. Potential Dismissal Under Iowa Rule of Criminal Procedure 2.33(1).

Iowa Rule of Criminal Procedure 2.33(1) provides "[t]he court, upon its own motion or the application of the prosecuting attorney, in the furtherance of justice, may order the dismissal of any pending criminal

prosecution." On appeal, Smith suggests that the order of dismissal may be sustained as a dismissal in furtherance of justice under the rule.[7]

The problem here is there is nothing in the record to suggest that the district court was asked to rely on the rule or did, in fact, rely upon the rule. No party cited the rule in their papers before the district court. The rule was not discussed at the hearing. And the rule is not mentioned at all in the district court order. Under the circumstances, there is no basis for this court to rule on an issue that was not presented below.

Textualists will note that the language of Iowa Rule of Criminal Procedure 2.33(1) is broad and unqualified. We have stated that review of dismissals in furtherance of justice is reviewable only for abuse of discretion. *See State v. Lundeen*, 297 N.W.2d 232, 235 (Iowa 1980). At the same time, we have generally suggested that the power should be used sparingly. *State v. Brumage*, 435 N.W.2d 337, 340 (Iowa 1989). Yet, there is a vein in the law suggesting that the rule may be utilized in cases involving prosecutorial misdeeds. *State v. Swartz*, 541 N.W.2d 533, 540 (Iowa Ct. App. 1995) (en banc). There is a lot of running room here for development of the law in a case where the issues were properly developed below.

But, before a district court may dismiss under the rule, the district court must provide the parties with notice, allow the parties to develop the record they desire, and state on the record the reason why the district court is granting dismissal in the furtherance of justice. In this case, we do not know what kind of record could be made by the defendant or the

---

[7]It should be noted that dismissals granted by the district court "in the furtherance of justice" under rule 2.33(1) are dismissals without prejudice if the underlying offense is a felony or aggravated misdemeanor. Iowa R. Crim. Pro. 2.33(1). In this case, Smith is charged with the offense of robbery in the second degree, a class "C" felony. Iowa Code § 711.3. Yet, the statute of limitations for a Class "C" felony is three years. Iowa Code § 802.3.

State or what kind of reasoned discussion might be presented by the district court. In particular, in a hearing under rule 2.33(1), the district court might well require the State to explain the reason for prosecutorial delay and not permit the turtle approach on the issue.

The cases in other jurisdictions dealing with dismissals in furtherance of the interest of justice counsel caution with respect to broad statements made without a fully developed record. Courts in other jurisdictions have declared that cases *may* be dismissed in the furtherance of justice as a result of prosecutorial delay. For example, in *People v. Jayson*, the court declared that "[w]e are of the opinion that a trial court, on its own motion, has [the] power . . . to dismiss an indictment in the interests of justice, where the trial has been unduly delayed by the District Attorney." 295 N.Y.S.2d 378, 379 (N.Y. App. Div. 1968). In *Brown v. Town of Henrietta*, the trial court dismissed a case in the furtherance of justice where the compelling factor was delay in prosecution. 459 N.Y.S.2d 996, 998–99 (N.Y. Sup. Ct. 1983). In *State v. Michielli*, the Supreme Court of Washington dismissed in the interest of justice a case where delay was designed to harass the defendant. 937 P.2d 587, 594–96 (Wash. 1997) (en banc). In *Pueblo v. Montezuma Martinez*, the court held that a seventy-nine-day delay in holding a preliminary hearing was not enough for granting a motion to dismiss, but the court warned that another delay might produce a different answer. 5 P.R. Offic. Trans. 988, 991–92 (P.R. 1977).

These cases, of course, are fact specific, involve somewhat different legal frameworks, and do not precisely parallel this case. But they do counsel caution before we make sweeping statements on the unpreserved issues. Although the majority suggests that it declines to go where the law

will not allow it to travel, the cogent opinion of the Chief Justice and the cases cited above demonstrate that there are other approaches.

Before making any interpretive choices, I would remand the "in furtherance of justice" question to the district court for the hearing required by the rule and the development of a full record. There was no hearing on the "in furtherance of justice" question, and although many facts are known, we don't know what else might be developed. I would prefer a full district court record before broadly opining on the issues lurking on the potentially very important "in the furtherance of justice" issue.

## VII. Conclusion.

The majority opinion in this case chooses to address unpreserved issues and, after making that choice, chooses to employ a cramped, knuckled approach to the substantive law. On the unpreserved issues, the majority chooses to paint with a broad brush designed to preempt future due process or speedy trial challenges on the minimalist record developed in this case. In my view, the discussion of unpreserved issues is conclusory, does not address the nuances of the law, and is overbroad.

As a result, for the reasons expressed above, I concur in the result to the extent I agree with the majority on the issues that were actually preserved. I dissent, however, from the majority's disposition of the unpreserved issues on the merits.